FILED
United States Court of Appeals
Tenth Circuit

July 1, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

BOBBIE STACY ANDREWS,

        Defendant,

_____

RICHARD LATHROP; CAMELA
LATHROP; JOE LAUMER,

        Claimants - Appellants.

No. 07-6092

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 06-CR-208-T)**

---

Philip O. Watts (Beverley Q. Watts with him on the brief), of Watts & Watts, Oklahoma City, Oklahoma, for Claimants - Appellants.

Stefan D. Cassella, Special Assistant United States Attorney, Eastern District of Virginia, Alexandria, Virginia, (John C. Richter, United States Attorney, Susan Dickerson Cox and Debra Paull, Assistant United States Attorneys, Western District of Oklahoma, Oklahoma City, Oklahoma, with him on the brief), for Plaintiff - Appellee.

---

Before **BRISCOE**, **SEYMOUR**, and **HARTZ**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

Bobbie Stacy Andrews pleaded guilty to federal charges of wire fraud and money laundering in the United States District Court for the Western District of Oklahoma. She had defrauded her victims of millions of dollars by diverting funds that they believed were being invested in mortgages. By the time the government seized her bank accounts, she had spent all but a fraction of that money. As a condition of her guilty plea, she forfeited the remaining money—a mere $61,427.14—to the government, which agreed to ask the court to divide the proceeds among her victims. Richard Lathrop, Camela Lathrop, and Joe Laumer (collectively, the Lathrops), who were the last of her victims, opposed this arrangement. They contended that they were entitled to all the seized funds because the money in the bank accounts could be traced back to them. They asked the court to impose a constructive trust that would grant them priority to the money over Andrews's other victims. The court denied the request as unfair to the other victims.

We hold that the district court did not abuse its discretion in deciding that the traditional purpose of a constructive trust—avoiding unjust enrichment—would not be served here, because the true parties in opposition to the Lathrops are the other fraud victims, who would not be unjustly enriched by receiving appropriate shares of Andrews's remaining loot. Accordingly, we affirm.

## I. BACKGROUND

Andrews was charged in a two-count information on September 13, 2006. The first count accused Andrews of wire fraud in violation of 18 U.S.C. § 1343. It alleged that from May 10, 2004, through November 18, 2005, Andrews "devised and intended to devise a scheme and artifice to materially defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises." Aplt. App. at 9–10. The object of the scheme was "to obtain money from investors, reportedly to purchase mortgages for investment," *id.*, but which was instead used for Andrews's own benefit. The information also alleged that as part of the scheme (1) Andrews told investors that she had the ability to purchase mortgages from certain banks at discounted prices and then resell the mortgages at a profit, (2) she instructed investors to wire funds to accounts that were deceptively named to suggest that they were under the control of the banks selling the mortgages, and (3) she provided investors with fraudulent assignments of mortgages and fraudulent title reports. The predicate jurisdictional act was a wire transfer on June 22, 2004, from the account of one of Andrews's victims in California to an Oklahoma account controlled by Andrews.

The second count of the information charged Andrews with money laundering on July 14, 2004, in violation of 18 U.S.C. § 1957—specifically, a $13,956.35 payment to Washington Mutual using funds obtained through her

wire-fraud violation. The information also alleged that $61,427.14 in two accounts at the Arvest Bank was forfeitable to the government.

Andrews pleaded guilty to the information on October 2, 2006. As part of her plea agreement, she agreed to forfeit the money in the Arvest accounts to the government, which committed to distributing the proceeds as restitution to the victims. The government then moved for a preliminary order of forfeiture. The district court entered the order, finding that the plea agreement had established the requisite nexus between the property and the offenses, and that the property was subject to forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 982, and 28 U.S.C. § 2461(c). As required by 21 U.S.C. § 853(n), the government published notice of the order.

The Lathrops then filed a timely petition under § 853(n) asserting an interest in the property. They alleged the following facts: In June 2004 Andrews fraudulently obtained money from an investor, Very Fund, LLC. The following month she used $13,956.35 of this money to pay Washington Mutual on a delinquent mortgage on 1929 Guilford Court, Norman, Oklahoma. (This is the act alleged in count two of the information). Approximately a year later, in June 2005, Andrews solicited money from the Lathrops to purchase a mortgage on the same Guilford property. The Lathrops wired $112,292.41 to the holder of the mortgage, B & B Funding, LLC, which executed an assignment of the mortgage to the Lathrops. Before filing the assignment with the county clerk, however,

-4-

Andrews switched the name of the assignee—the Lathrops' investment company—to that of her own company, Andrews Group Investments, Inc. In late November 2005, Andrews acquired title to the Guilford property and then obtained a new mortgage on the property, the proceeds of which she used to pay off the former B & B mortgage (then held by Andrews Group Investments). She deposited the $101,000 paid to Andrews Group Investments in two bank accounts at Arvest Bank.

Based on these facts, the Lathrops asserted that Andrews's fraud on them was entirely separate from the fraud described in the information. They pointed out that they transferred funds directly to a third party, B & B Funding, rather than depositing them into a deceptively named account controlled by Andrews, the practice referred to in the information. The government, they contended, had not established the requisite nexus between the seized funds and the crimes of conviction, so the funds could not be forfeited. They further argued that they were entitled to the imposition of a constructive trust on the Arvest funds because those funds were traceable to the specific fraud against them.

In its final forfeiture order the district court reaffirmed its earlier finding that the government had established the requisite nexus between the crimes charged in the information and the property to be forfeited. The court also denied the Lathrops' request for a constructive trust. It emphasized that a constructive trust is an equitable remedy and stated that "[t]o impose a constructive trust in

their favor would elevate their position on the basis of Andrews' conduct, to the detriment of her other victims," which the court concluded would be inequitable. Instead, the court ordered that their share and that of the other victims "be determined according to the governing principles designed to treat all of Andrews' victims equitably." Aplt. Appx. at 119–120. The Lathrops appeal.

## II.   DISCUSSION

In issuing a preliminary order of criminal forfeiture, the district court must determine that the property at issue is forfeitable under an applicable statute. Fed. R. Crim. P. 32.2(b)(1). At this stage the court does not—and, indeed, may not—determine the rights of any third parties who assert an interest in the property. *Id.* at 32.2(b)(2). Third parties then have an opportunity to assert their rights to the property in an "ancillary proceeding," *id.* 32.2(c), governed here by 21 U.S.C. § 853(n), which permits those who assert an interest in the property to file a petition seeking amendment of the preliminary forfeiture order to exclude their interest. Section 853(n)(6) recognizes two situations in which the forfeiture order must be amended: when the petitioner has shown, by a preponderance of the evidence, that

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section[.]

Thus, although the preliminary order of forfeiture does not take into account the interests of third parties, the final order must be amended to exempt their qualifying interests. Because the Lathrops do not argue that they are bona fide purchasers for value, only § 853(n)(6)(A) is at issue here.

In their brief on appeal the Lathrops reiterated their argument in district court that the government did not meet its burden of proving the requisite nexus between the funds to be forfeited and the crimes of conviction. But, as set forth above and as stated by the government in its response, a third party has no right to challenge the preliminary order's finding of forfeitability; rather, the third party is given an opportunity during the ancillary proceeding to assert any ownership interest that would require amendment of the order. We agree with the government's explanation: "[I]f the property really belongs to the third party[,] . . . he will prevail and recover his property whether there were defects in the criminal trial or the forfeiture process or not; and if the property does not belong to the third party, such defects in the finding of forfeitability are no concern of his." Aplee. Br. at 18–19 (emphasis and footnote omitted). Thus, at oral argument the Lathrops modified their position. We now understand them to be challenging not the determination of forfeitability made in the preliminary order

but rather the district court's determination in the ancillary proceeding that they, Very Fund, and the other investors were so similarly situated as victims that it would be inequitable to impose a constructive trust for their benefit.

It is the government's position that a constructive trust can never support a claim under § 853(n)(6)(A) because the trust does not exist until imposed by the district court, and therefore an interest created by a constructive trust cannot exist "at the time of the commission of the acts which gave rise to the forfeiture," as § 853(n)(6)(A) requires. We have previously held in the bankruptcy context, however, that "the effective date of the constructive trust is the date the wrongful act occurred." *U.S. Dep't of Energy v. Seneca Oil Co. (In re Seneca Oil Co.)*, 906 F.2d 1445, 1453 (10th Cir. 1990) (emphasis omitted). In any event, it is unnecessary for us to decide this issue, because even if a constructive trust can satisfy the requirements of § 853(n)(6)(A), the district court did not abuse its discretion in ruling that the Lathrops had not established their entitlement to a constructive trust.

A constructive trust is a legal fiction, "an equitable remedy devised to prevent unjust enrichment and compel restitution of property that in equity and good conscience does not belong to the Defendant." *Amdura Nat'l Distrib. Co. v. Amdura Corp., Inc. (In re Amdura Corp.)*, 75 F.3d 1447, 1451–52 (10th Cir. 1996) (internal quotation marks omitted). It is a proper remedy when a recipient acquired property by defrauding the claimant. *See Tenneco Oil Co. v. Joiner*, 696

F.2d 768, 776 (10th Cir. 1982) (applying Oklahoma law).  The recipient of the

property, the constructive trustee, is deemed to hold legal title to the property for

the benefit of the claimant, and it is the obligation of the constructive trustee to

surrender the property to the claimant.  *See* Restatement (Third) of Restitution

and Unjust Enrichment, § 55(1)-(2) (Tentative Draft No. 6, 2008).  A constructive

trust can serve different purposes depending on whether the recipient, the debtor,

is solvent.  A claimant facing a solvent defendant may prefer the remedy of a

constructive trust over money damages in a number of situations, such as "when

the property in question has special value for the claimant; when it has

appreciated in value; when its value might be difficult to establish; or when

recovery of a specific thing is merely less costly than proof and recovery of its

value."  *Id.* at § 55 cmt. c.  When the claimant faces an insolvent recipient, the

remedy retains these advantages but its principal advantage—and one crucial to

this case—is that it gives the claimant priority over other creditors.  *See id.*  In

this context, "the claimant . . . must argue—in effect—that restitution [and

imposition of a constructive trust] is justified by the unjust enrichment of *the*

*recipient's creditors* at the claimant's expense."  *Id.*

Typically, a claimant who otherwise establishes the requirements for

imposition of a constructive trust can demonstrate that the recipient's other

creditors would be unjustly enriched at the claimant's expense because the other

creditors voluntarily took on the recipient's debt.  "The intuitive objection is that

a debtor should not be allowed to rob Peter to pay Paul." *Id.* § 55 cmt. d. "Underlying this intuition is the distinction between [the creditor]'s voluntary extension of credit and the defective transaction that underlies [the claimant]'s claim in restitution." *Id. See generally* Andrew Kull, *Restitution in Bankruptcy: Reclamation and Constructive Trust*, 72 Am. Bankr. L.J. 265, 277–290 (1998); Emily L. Sherwin, *Constructive Trusts in Bankruptcy*, 1989 U. Ill. L. Rev. 297, 335–337, 350–55 (1989). The rationale for imposing a constructive trust in favor of one creditor may not, however, apply when the competing creditors were also "involuntary" creditors.

With these concepts in mind, we return to the specifics of this case. Because imposition of a constructive trust is an equitable remedy, we review the district court's decision for abuse of discretion. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 709 (10th Cir. 2005). We hold that there was no such abuse here. The Lathrops and Andrews's other creditors were all victims of her fraud. The district court could properly decide that none deserved priority over the others. All the victims, including the Lathrops, were fraudulently induced to part with their money, believing themselves to be investing in valid mortgage assignments. None voluntarily became creditors of Andrews. They thought that they were becoming secured creditors of property owners.

The Lathrops contend that they are distinguishable from the other victims because Andrews's fraud on them was not part of the scheme of which she was

convicted. We are inclined to disagree with this contention; the scheme alleged in the information appears to encompass the Lathrops' transaction, in both time and content. But we need not rely on that being the case. Even if the Lathrops are correct that their fraud was not part of the scheme alleged in the information, this does not necessarily distinguish them from the other fraud victims, who also became involuntary creditors of Andrews. The district court acted within the boundaries of sound discretion in deciding that the other victims would not be unjustly enriched by sharing in the money recovered from their defrauder. That Andrews spent their money first does not make their share of the recovery unjust. As we have previously recognized, a court should not employ an equitable fiction "to elevate [one] claim over the claims of other creditors if those creditors are similarly situated." *Hill v. Kinzler* (*In re Foster*), 275 F.3d 924, 928 (10th Cir. 2001) (addressing lowest-intermediate-balance rule).

We also reject the Lathrops' argument that they meet the requirements under Oklahoma law for the imposition of a constructive trust and that we must therefore instruct the district court to impose one. We recognize that in federal forfeiture proceedings, ownership interests (including constructive trusts) are defined by state law. *See United States v. 9844 S. Titan Court, Unit 9, Littleton, Colo.*, 75 F.3d 1470, 1478 (10th Cir. 1996); *United States v. Tracts 10 & 11 of Lakeview Heights, Canyon Lake, Comal County, Tex.*, 51 F.3d 117, 121 (8th Cir. 1995). But we see no conflict between the district court's decision and Oklahoma

law.  Oklahoma recognizes that a constructive trust is an equitable device, the primary purpose of which is avoiding unjust enrichment.  *Easterling v. Ferris*, 651 P.2d 677, 680 (Okla. 1982).  When a constructive trust would not serve to prevent unjust enrichment, and would instead deliver inequitable results, declining to impose one is not inconsistent with Oklahoma law.  Other courts have recognized that when a district court determines that granting relief upon an equitable theory such as constructive trust would lead to an inequitable result, it may in its discretion decline to do so.  *See United States v. Durham*, 86 F.3d 70, 73 (5th Cir. 1996); *SEC v. Elliott*, 953 F.2d 1560, 1569 (11th Cir. 1992).  *Cf. Foster*, 275 F.3d at 928 (remanding for district court to consider whether constructive trust would be equitable).

## III.  CONCLUSION

The district court did not abuse its discretion in refusing the Lathrops' request for a constructive trust.  We AFFIRM.