**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 4, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ECCO PLAINS, LLC.; KEN ULRICH;
HIGH PLAINS CATTLE COMPANY,
LLC.,

        Plaintiffs – Appellants,

v.

UNITED STATES OF AMERICA,

        Defendant - Appellee.

No. 11-1559

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:10-CV-02961-RPM)**

---

Jordan D. Factor (Matthew M. Wolf with him on the brief) of Allen & Vellone, P.C.,
Denver, Colorado, for Plaintiffs – Appellants.

Michael Conrad Johnson, Assistant United States Attorney, Denver, Colorado (John F.
Walsh, United States Attorney, Denver, Colorado, and Dina L. Biblin, Senior Litigation
Counsel, FDIC Legal Division, Arlington, Virginia, with him on the brief) for Defendant
– Appellee.

---

Before, **TYMKOVICH**, **McKAY**, and **O'BRIEN,** Circuit Judges.

---

**O'BRIEN**, Circuit Judge.

The Federal Depository Insurance Corporation (FDIC), while acting as receiver[1] of the New Frontier Bank (the Bank), used proceeds from the sale of cattle belonging to a limited liability company (LLC) to pay down a loan of one of the two LLC members. According to the complaint, the FDIC had no authority to do so because the payment was contrary to the members' agreement. Ignoring the separate entity status of an LLC, the other LLC member brought suit in its own name against the United States under the Federal Tort Claims Act (FTCA) for what it claimed to be the FDIC's wrongful disbursement of the proceeds. The LLC itself sued the government under the Fifth Amendment Takings Clause. The district judge dismissed the suit for failure to state a claim. While we agree dismissal was appropriate, it should have been for lack of jurisdiction as to the member's claims (the FTCA's "interference with contract" jurisdictional exception, *see* 28 U.S.C. § 2680(h)) and as to the LLC's claim because jurisdiction lies exclusively with the United States Court of Federal Claims.

## I. FACTUAL BACKGROUND

We draw the facts from the amended complaint. Ken Ulrich is the majority owner of High Plains Cattle Company, LLC. High Plains and Doug English formed ECCO

---

[1] FDIC often operates in the dual capacities of corporation and receiver. As a corporation it insures bank deposits and pays depositors when an insured bank fails. *Bullion Servs., Inc. v. Valley State Bank*, 50 F.3d 705, 708 (9th Cir. 1995). As receiver, it steps into the shoes of the failed bank and either (1) liquidates the assets and pays off the bank's creditors and shareholders or (2) engages in a purchase and assumption transaction in which it sells the assets of the failed institution to another solvent bank. *FDIC v. Jenkins*, 888 F.2d 1537, 1540–41 (11th Cir. 1989); *see also Golden Pacific Bancorp. v. FDIC*, 375 F.3d 196, 201 (2d Cir. 2004).

Plains, LLC, to raise cattle for sale. Each made a $7,000,000 capital contribution to ECCO Plains. High Plains financed its capital contribution with a loan from the New Frontier Bank; Ulrich personally guaranteed the debt.[2] English also financed his capital contribution from the Bank.[3] No ECCO Plains assets were pledged as security for either loan. Indeed, it appears ECCO Plains had no business relationship with the Bank.

Prior to forming ECCO Plains, High Plains and English entered into an agreement regarding its operation. Relevant here, the parties agreed that High Plains would, upon request, receive a return of its capital contribution before English received any of his capital contribution. The Bank, as well as FDIC, had a copy of the agreement.

The Bank subsequently became insolvent and FDIC was appointed receiver. Thereafter, ECCO Plains sold approximately $5,500,000 worth of cattle to a packing house in Northern Colorado. FDIC caused the packing house to make the sale proceeds payable to both ECCO Plains and FDIC.[4]

---

[2] Apart from the High Plains loan, Ulrich obtained other loans from the Bank for entities separate and distinct from ECCO Plains. Ulrich was not the borrower on these loans but he personally guaranteed them. As of April 10, 2009, the balances on all of these loans, including the High Plains loan, exceeded $30,000,000.

[3] The borrower on his loan, however, was English Cattle Company. Like many other aspects of this case, it is unclear why the Bank loaned money to English Cattle Company rather than English, who actually utilized the loan proceeds.

[4] In the district court, the government represented that the Bank's records showed the owner of the cattle was English Cattle Company, not ECCO Plains, and the sale proceeds were made payable to English Cattle Company and FDIC. If true, that probably
(Continued . . .)

High Plains made a written demand to FDIC to apply 100% of the sale proceeds to High Plains' loan. The demand was based on its 50 percent membership interest in ECCO Plains and the terms of the ECCO Plains/English operating agreement. English, on the other hand, instructed FDIC to apply 50% of the proceeds to the High Plains loan and the other 50% to the English Cattle Company loan. FDIC, however, did neither. Instead, it applied all of the proceeds to the English Cattle Company loan. It then sold that loan, along with the High Plains loan, to third parties.

ECCO Plains, High Plains and Ulrich filed suit against the United States. All three alleged conversion and negligence under the FTCA. ECCO Plains also alleged a Fifth Amendment Takings Claim. The government moved to dismiss based on lack of subject matter jurisdiction or, in the alternative, for failure to state a claim. The district judge granted the motion without much of an explanation. He concluded ECCO Plains' FTCA claims should be dismissed for lack of subject matter jurisdiction because it failed to file a notice of claim. The remaining claims were dismissed for failure to state a claim.

## II. DISCUSSION

Before turning to the issues, we pause to address what is <u>not</u> at issue in this case. The cattle were owned by ECCO Plains. The proceeds from the sale of the cattle also belonged to ECCO Plains. It is unclear how FDIC came to be a co-payee of those

---

explains why FDIC acted as it did. But the complaint alleges the cattle belonged to ECCO Plains and the proceeds were made payable to ECCO Plains and FDIC.

proceeds or why ECCO Plains endorsed the check, especially since it had no relationship with the Bank and consequently no relationship with FDIC as receiver. English was the managing member of ECCO Plains and endorsed the check in that capacity but, for some reason, was not sued.[5] But whatever claim for conversion or negligence ECCO Plains may have had against the government based on FDIC's actions is not before us. The judge concluded ECCO Plains had not filed a notice of claim prior to bringing suit, leaving the district court without jurisdiction over its tort claims.[6] *See Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005) (stating a notice of claim is a jurisdictional prerequisite for bringing suit under the FTCA). ECCO

---

[5] The district judge noted the anomaly:
THE COURT: Well, did ECCO Plains get the money?
[COUNSEL]: No. ECCO Plains did not get the money.
THE COURT: Well, what happened to it?
[COUNSEL]: What happened to the money is . . . the check was endorsed by Doug English—
THE COURT: Yeah.
[COUNSEL]: —as a managing member of ECCO Plains—
. . . .
THE COURT: [W]hy didn't you sue English?
. . . .
[COUNSEL]: For a number of reasons. First and foremost, it's not obvious that Mr. English did anything inherently wrong.
THE COURT: Well, he violated the agreement that you've alleged.
[COUNSEL]: Well, that's true, the underlying agreement, but—

(Appellants' App'x at 139-41.)

[6] While the judge's dismissal order only mentioned ECCO Plains' conversion claim, it is clear his ruling would also apply to the negligence claim.

Plains has not appealed from this decision.  ECCO Plains' only remaining claim is its Fifth Amendment Takings Claim.[7]  Before turning to that claim, however, we first address High Plains and Ulrich's conversion and negligence claims under the FTCA.[8]

A.  High Plains and Ulrich's Conversion and Negligence Claims

"The Federal Tort Claims Act [FTCA] . . . provides generally that the United States shall be liable, to the same extent as a private party, 'for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'"  *Kosak v. United States*, 465 U.S. 848, 851-52 (1984) (quoting 28 U.S.C. § 1346(b)); *see also* 28 U.S.C. § 2674.  But there are exceptions to this waiver of immunity.  *See* 28 U.S.C. § 2680.  Relevant here, the FTCA excludes from its coverage "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or *interference with contract rights*."  *Id*. § 2680(h) (emphasis added).  If a claim falls within an

---

[7] ECCO Plains' Fifth Amendment Takings Claim is not cognizable under the FTCA; thus, no notice of claim was necessary to preserve it.  *See FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994).

[8] Unlike ECCO Plains, High Plains and Ulrich filed the requisite notice of claim. According to the complaint, Ulrich's interest in the sale proceeds arises from his membership interest in High Plains which, at best, is twice removed.  There is no mention of any claimed right to the proceeds based on his status as guarantor of High Plains' loan.

exception, it must be dismissed for lack of jurisdiction. *Estate of Trentadue*, 397 F.3d at 853.

The government relies on the "interference with contract" exception, arguing that despite the labels placed on the claims (i.e., conversion and negligence), High Plains and Ulrich's complaint is that FDIC interfered with their contractual right to the sale proceeds as outlined by High Plains' operating agreement with English. We agree.[9]

To determine whether a claim falls within an FTCA exception, we identify "those circumstances which are within the words and reason of the exception—no less and no more." *Kosak*, 465 U.S. at 853 n.9 (quotations omitted). In doing so, "[w]e must . . . look beyond the literal meaning of the language to ascertain the real cause of complaint." *Hall v. United States*, 274 F.2d 69, 71 (10th Cir. 1959).

In *Hall*, the government tested Hall's cattle for brucellosis and determined some had the disease. As a result, Hall sold the cattle for less than fair market value. In fact, the cattle did not have the disease. Hall sued the government for negligently performing

---

[9] Both parties say the district judge dismissed the negligence and conversation claims for lack of subject matter jurisdiction apparently based on the interference with contract exception. They are mistaken; he dismissed them for failure to state a claim. While the judge did not provide much explanation, he apparently disagreed with the government that the "interference with contracts" exception applied.

A dismissal based on the interference with contract exception deprives a court of subject matter jurisdiction—an issue we must ordinarily address before turning to the merits. *See Estate of Trentadue*, 397 F.3d at 853; s*ee also Starkey ex rel. A.B. v. Boulder Cnty. Soc. Servs.*, 569 F.3d 1244, 1259-60 (10th Cir. 2009). We review a dismissal for lack of jurisdiction de novo. *See Harms v. IRS*, 321 F.3d 1001, 1007 (10th Cir. 2003).

the tests. But we concluded Hall had not alleged damages based on the negligent testing, i.e., that the cattle suffered physical damage due to the testing. *Id.* at 71. Rather, his "real claim" was that as a result of the negligent manner in which the tests were made, Hall received inaccurate information and sold his cattle for a loss. *Id.* Thus, his damages arose from the government's misrepresentation of the cattle's condition. *Id.* Because misrepresentation was an exempted tort under the FTCA, dismissal was proper. *Id.*

The Supreme Court adopted *Hall*'s reasoning in *United States v. Neustadt*, 366 U.S. 696, 703-04 (1961). There, the Neustadts purchased a home which had been inspected by an appraiser with the Federal Housing Administration (FHA). Relying on the appraisal, the Neustadts paid more for the home than its fair market value. After purchasing the home and finding numerous defects, the Neustadts sued the government under the FTCA. They alleged FHA acted negligently in performing the inspection and appraisal. The Supreme Court held the case was barred under 28 U.S.C. § 2860(h) which exempts from FTCA coverage "any claim arising out of . . . misrepresentation." *Id.* at 701 (quotations omitted). It held the Neustadts' claim that the government had breached its "duty to use due care in obtaining and communicating information upon which [they were] reasonably . . . expected to rely in the conduct of [their] economic affairs," merely restated the traditional legal definition of "negligent misrepresentation" as would have been understood by Congress when the FTCA was enacted. *Id.* at 706-07. Therefore, despite the Neustadts labeling their claim as one for negligence, the Court determined the claim was really one for misrepresentation. *Id.* at 700-01, 711.

However, merely because a complaint contains allegations supporting an exempted tort does not mean it cannot also contain other allegations supporting a non-exempted tort. In *Block v. Neal*, Neal obtained a loan from the Farmers Home Administration (FmHA) to build a house. 460 U.S. 289 (1983). FmHA agreed to supervise the construction. FmHA inspected the house after it was built and found no defects. Neal moved in and discovered numerous defects. She sued FmHA under the FTCA. Relying on *Neustadt*, the government argued the misrepresentation exception applied. *Id.* at 294, 296. The Supreme Court disagreed and distinguished *Neustadt*. *Id.* at 296. It said the gravamen of the complaint in *Neustadt* was that plaintiffs were misled by the appraisal; they had not alleged any injury they suffered independent of their reliance on the erroneous appraisal. *Id.* In contrast, FmHA's misstatements were not essential to Neal's negligence claim—the defective house did not arise from the erroneous inspection reports but rather from the negligent construction. *Id.* at 297-98. The Court concluded the government owed a duty to Neal separate and apart from any duty to exercise due care in communicating information, namely, to exercise due care in supervising the construction of the house (the Good Samaritan doctrine). *Id.* at 297. The fact Neal could have also brought a misrepresentation claim based on her reliance on any inspection reports (absent the misrepresentation exception to the FTCA) was of no moment:

> [T]he partial overlap between [a misrepresentation claim and the Good Samaritan doctrine] does not support the conclusion that if one is excepted under the Tort Claims Act, the other must be as well. Neither the language nor history of the Act suggest

that when one aspect of the Government's conduct is not actionable under the "misrepresentation" exception, a claimant is barred from pursuing a distinct claim arising out of other aspects of the Government's conduct. The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced. Any other interpretation would encourage the Government to shield itself completely from tort liability by adding misrepresentations to whatever otherwise actionable torts it commits.

*Id.* at 298 (citations and quotations omitted).

Determining whether a complaint falls within an exception under § 2680(h) is no easy task. This is especially true in this case where High Plains and Ulrich strain to convince us their claims are what they say they are—conversion and negligence. But looking beyond their labels to the gravamen of the complaint reveals their true claim is that FDIC negligently paid out proceeds belonging to ECCO Plains which they had a "right" to. But the only "right" they had to the proceeds arose from the contract between High Plains and English. Therefore, the essence of their claim is that FDIC interfered with this contract. Thus, the "intentional interference with contract" exception applies.[10]

---

[10] High Plains and Ulrich also claim they had a right to the proceeds based on High Plains' 50 percent ownership interest in ECCO Plains. They are incorrect. *See Meyer v. Haskett*, 251 P.3d 1287, 1292 (Colo. App. 2010) ("[LLCs] generally operate under an entity theory of property rights. Under this theory, a member has no interest in the property owned by the LLC.") (citation omitted). Moreover, while Colorado law gives members a right to receive distributions from the LLC (unless its liabilities exceed its assets), that right is limited "to the extent and at the times or upon the happening of the events stated in the operating agreement or as otherwise agreed by all of the members." *See* Colo. Rev. Stat. Ann. §§ 7-80-601, 7-80-606(1). Here, the members agreed High Plains could request a return of its capital contribution prior to English. But it had not yet done so. The complaint only alleges High Plains and Ulrich "*intended* to exercise their

(Continued . . .)

High Plains and English nevertheless insist this is not an interference with contract case (or not solely one under the reasoning of *Block*) for two reasons. First, their complaint does not state an interference with contract claim because their allegations do not satisfy all the elements of an interference claim under Colorado law.[11] Second, they adequately alleged a breach of a duty separate and distinct from the duty not to interfere with contractual relationships.

    1.  Elements of Interference Claim

High Plains and English claim the interference with contract exception does not apply because under Colorado law, an interference with contract claim requires the defendant (in this case FDIC) to intend to induce a breach of contract and to in fact cause

---

right to [a] return of [High Plains'] capital contribution." (Appellants' App'x at 11 (emphasis added).)

[11] The government contends High Plains and Ulrich waived this argument by not raising it below. High Plains and Ulrich say they did raise it. Looking to the record, the government has the better argument. We will nevertheless consider the argument because we can easily dispose of it.

High Plains and Ulrich also complain it is unclear what contract the government is relying on in making the interference with contract argument. They say the government refers to ECCO Plains' operating agreement but the complaint contains no allegations concerning an operating agreement and in fact there is no operating agreement. We disagree. The complaint alleges: "Prior to the formation of ECCO Plains, English and High Plains entered into a *binding agreement regarding the operation of ECCO Plains*, the parties' capital contributions and the parties' exposures on their . . . loans [with the Bank]. The parties agreed that High Plains would receive a return of its capital contribution upon request, and before English received any of his capital contribution." (Appellants' App'x at 9 (emphasis added).) In any event, whether or not it is technically an operating agreement, it is clear the government is relying on the agreement between High Plains and English in which High Plains would receive a return of its capital contribution upon request before English received any of his contribution.

a breach. They say their complaint contains no allegations supporting such intent or breach. To the extent our analysis requires us to determine whether High Plains and Ulrich's complaint contains the essential elements of an interference with contract claim, we conclude it does. *See Estate of Trentadue*, 397 F.3d at 854-55 (stating other courts have held a claim must contain the essential elements of excepted tort and finding misrepresentation exception did not apply because two elements of misrepresentation claim were not present).

Under the FTCA, the United States is liable to the same extent a private person would be liable "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). High Plains and Ulrich rely on this provision to apply Colorado law in determining whether their complaint states an interference claim. However, in *Neustadt*, the Supreme Court did not rely on the elements of misrepresentation as defined by state law but rather on "the traditional and commonly understood legal definition" of misrepresentation as defined by the Restatement of Torts and other relevant treatises which it believed "Congress had in mind" when it enacted the FTCA in 1946. *Neustadt*, 366 U.S. at 706 & n.16. We need not resolve the issue as the result is the same regardless of the source of the tort's elements.

Turning first to Colorado law, High Plains and Ulrich correctly quote the Colorado Supreme Court:

> To be liable for intentional interference with contract, a defendant must 1) be aware of a contract between two parties, 2) *intend that one of the parties breach the contract, 3) and induce the party to breach* or make it impossible for the party

to perform the contract.  In addition, the defendant must have acted improperly in causing the result.

*Krystkowiak v. W.O. Brisben Cos.*, 90 P.3d 859, 871 (Colo. 2004) (emphasis added) (citations and quotations omitted).  Thus, they say Colorado interference law requires both an intent to induce a breach and a breach; their complaint does not allege either.

However, prior to *Krystkowiak*, the Colorado Supreme Court relied on the definition provided by the Restatement (Second) of Torts § 766 (1979), which does not require the defendant to have intended to induce a breach or to have caused an actual breach:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing *or otherwise causing the third person not to perform the contract,* is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*See Mem'l Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc.*, 690 P.2d 207, 210 (Colo. 1984) (quoting Restatement (Second) of Torts § 776) (emphasis omitted, new emphasis added); *see also Colo. Nat'l Bank v. Friedman,* 846 P.2d 159, 170 (Colo. 1993).  Comments to § 766 clarify that inducement of a breach is not a necessary showing but rather merely one way in which the tort can be established.  *See* Restatement (Second) of Torts § 766, cmt. k.  The focus is not on whether the third party breached the contract but rather on the defendant's conduct.  *Id.*, cmts. c & j.

The Colorado Court of Appeals recently addressed the apparent conflict between *Krystkowiak* (requiring impossibility of performance or breach of contract) and the prior

- 13 -

precedent adopting the Restatement (requiring merely interference with performance). *See Slater Numismatics, LLC v. Driving Force, LLC*, -- P.3d --, No. 11CA0683, 2012 WL 2353847, at \*4-5 (Colo. App. June 21, 2012).  It concluded *Krystkowiak* did not overrule the prior precedent because it relied on it.  *Id.* at \*5.  It interpreted *Krystkowiak*'s discussion of impossibility and breach as merely expressing two ways in which interference with contract could be established.  *Id.*  Thus, the Court of Appeals determined Colorado courts could still rely on the Restatement definition and under that definition, a defendant may be liable for interference with contract where:

> 1. the defendant causes a third party to fail in some significant aspect of performance which the third party owes to the plaintiff, such as by depriving the third party in significant part of the means of performance; and
>
> 2. the defendant's conduct was wrongful; and
>
> 3. the defendant acted either for the primary purpose of interfering with the performance of the plaintiff's contract, or knowing that the interference was certain or substantially certain to occur as a result of the defendant's action.

*Id.* at \*9.

A similar result ensues when we consider pertinent treatises in effect at the time of the FTCA's enactment in 1946 (including the exceptions contained in 28 U.S.C. § 2860(h)).  For example, the Restatement (First) of Torts defined interference with contract as "one, who without a privilege to do so, induces or otherwise purposely causes a third person not to . . . perform a contract with another."  *See* Restatement (First) of Torts § 766 (1939); *see also* William L. Prosser, Handbook of the Law of Torts, § 104 at 987-89  (1941) (breach of contract not required for interference with contractual

- 14 -

relations; action for interference with contract has also been allowed where the defendant has merely prevented the contract's performance or made it more difficult).

In this case, High Plains and Ulrich have alleged facts stating an interference with contract claim against the government under Colorado law and the treatises in effect in 1946: (1) FDIC induced English to endorse the check on which both FDIC and ECCO Plains were payees, thus permitting FDIC to cash a check which allegedly belonged to High Plains under its agreement with English;[12] (2) FDIC allegedly had no privilege to induce English to endorse the check and thereby violate his agreement with High Plains; and (3) FDIC, having knowledge of the parties' agreement and their instructions as to payment of the proceeds, knew performance of the agreement would be compromised.

Thus the complaint does satisfy the elements of interference with contract.[13]

---

[12] High Plains and Ulrich claim FDIC did not induce English to breach the agreement. But a breach is not necessary; mere interference with performance is enough. In any event, their attorney admitted English's violation of the agreement. *See supra* n.5.

[13] High Plains and Ulrich also argue that merely because a contract establishes ownership interests or substantiates damages does not mean the interference with contract exception applies. But the cases they cite are inapposite. *Ft. Vancouver Plywood Co. v. United States* concerned a contact between a timber company and the United States. 747 F.2d 547 (9th Cir. 1984). Thus, the question was whether the timber company's complaint sounded in tort or contract for purposes of whether the timber company alleged a claim under the FTCA. *Id.* at 549-52. The interference with contract exception was not at issue. The exception was in question in *Coastwise Packet Co. v. United States*, 398 F.2d 77 (1st Cir. 1968), and *Appleton v. United States*, 69 F. Supp.2d 83 (D.D.C. 1999). In those cases the court held the fact a contract may establish the value of the plaintiff's negligence claim does not mean the interference with contract exception applies. *Coastwise Packet Co.*, 398 F.2d at 79; *Appleton*, 69 F. Supp.2d at 88. Here, the contract

(Continued . . .)

2. Separate and Distinct Duty

High Plains and English also claim the interference with contract exception does not apply because their complaint alleges FDIC breached several duties separate and distinct from its duty not to interfere with a third-party's contractual relationships. Namely, they allege FDIC breached its duties (1) not to exercise dominion and control over property to which it had no interest, (2) to turn over property it wrongfully held to the proper owners, (3) to exercise reasonable care in the custody and preservation of the property, (4) to avoid foreseeable damage to High Plains and Ulrich, and (5) to apply the funds equally. Thus, under *Block*, they say their complaint is not barred by the interference with contract exception because their injuries are not "wholly attributable" to the exempted tort and any allegations of interference with contract are "not essential" to their claims. *Block*, 460 U.S. at 297.

But these alleged duties, even if owed to High Plains and Ulrich, as opposed to ECCO Plains (the owner of the cattle and proceeds), all arise out of High Plains' contract with English. Thus, they are not independent of the contract and the allegations of interference are essential to their claims. Moreover, High Plains and Ulrich have not alleged any injury they suffered independent of FDIC's interfering with their right to

---

between High Plains and English does more than just establish value; it establishes High Plains and Ulrich's alleged right to the sale proceeds. And the complaint alleges (despite its labels) FDIC interfered with those rights.

- 16 -

receive the proceeds under that contract. Therefore, their injuries are wholly attributable to FDIC's interference with the contract.

High Plains and Ulrich rely mainly on *Sowell v. United States*, 835 F.2d 1133 (5th Cir. 1988). Sowell, an Army private, completed a form allowing the Army to deduct a life insurance premium from his paycheck and pay it to the insurance company. No premiums were ever paid. As a result, when Sowell died, the insurance company denied coverage to the anticipated beneficiary. The beneficiary sued the United States under the FTCA alleging it negligently misplaced the form. The United States moved to dismiss based on the interference with contract exception. The court disagreed: "[T]he duty the Army owed to use due care in processing Sowell's allotment forms is distinct from any duty the Army may have had not to interfere with existing or potential contractual relationships between Sowell and [the insurance company]." *Id.* at 1135.

*Sowell* is inapposite. There, the Army agreed with Sowell to pay the premium out of his paycheck. Thus, the Army had a duty independent of its duty not to interfere with Sowell's contract with the insurance company. Here, there is no allegation FDIC agreed with High Plains and Ulrich to perform any service on their behalf with regard to the sale proceeds.

Because the interference with contract exception to the FTCA applies, the district court lacked jurisdiction over High Plains and Ulrich's conversion and negligence claims.[14]

---

[14] Even assuming, *arguendo*, the complaint could be construed as alleging conversion and negligence claims independent of an interference with contract claim, we believe they fail for one key reason—ECCO Plains, not High Plains and Ulrich, owned the cattle and the proceeds from the sale of the cattle. High Plains and Ulrich claim FDIC owed them a duty of reasonable care because their injury was foreseeable given High Plains 50 percent ownership interest in ECCO Plains and its debt with the Bank. But under Colorado law, a member of an LLC has no interest in the property owned by the LLC. *See Meyer, supra* n.10. And they point to no Colorado cases recognizing a legal duty owed to them (as opposed to ECCO Plains) in these circumstances. Thus, they cannot establish a negligence claim. *Ryder v. Mitchell*, 54 P.3d 885, 889 (Colo. 2002) ("To establish a prima facie case for negligence, the plaintiff must show that the defendant owed a legal duty of care to the plaintiff, the defendant breached that duty, the plaintiff suffered injury, and the defendant's breach caused the plaintiff's injury. If a negligence action is based on facts that do not impose a duty of care upon a defendant for a plaintiff's benefit, the claim will fail.") (citations omitted); *see also English v. Griffith*, 99 P.3d 90, 93 (Colo. App. 2004) ("A negligence claim fails when it is based on circumstances for which the law does not impose a duty.").

Similarly, High Plains and Ulrich cannot state a conversion claim. Their claim for conversion is based on two theories: (1) FDIC's obligation to "particularly treat" the sale proceeds, namely to apply at least 50 percent to High Plains' loans due to its 50 percent membership interest in ECCO Plains, *see Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1195 (Colo. App. 2008), and (2) High Plains and Ulrich's immediate right to possess the sale proceeds. The former theory fails because we see no obligation owed to High Plains and Ulrich, as opposed to ECCO Plains, to "particularly treat" the sale proceeds; the latter fails because an immediate right to possess certain property is not enough—the plaintiff must also have some general or specific property interest in the converted property. *See Byron v. York Inv. Co.*, 296 P.2d 742 (Colo. 1956) ("Conversion is any distinct, unauthorized act of dominion or ownership exercised by one person over personal property *belonging to another* . . . . An action for damages for the conversion of personal property cannot be maintained *unless plaintiff had a general or special property [interest] in the personalty converted, coupled with possession or the immediate right thereto*.") (emphasis added). Again, a member does not have any interest in property

(Continued . . .)

- 18 -

B.  ECCO Plains' Fifth Amendment Takings Claim

In the district court, the government argued ECCO Plains' Fifth Amendment Takings claim failed either for lack of jurisdiction or failure to state a claim.  The district judge dismissed it for failure to state a claim.[15]  The claim should have been construed as an illegal exaction claim and dismissed for lack of jurisdiction.

An illegal exaction claim exists when "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum that was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) (quotations omitted); *see also Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) ("An illegal exaction . . . involves money that was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.") (quotations omitted).  In other words, an illegal exaction occurs "when the Government has the citizen's money in its pocket." *Aerolineas Argentinas*, 77 F.3d at 1573 (quotations omitted).  "An illegal exaction involves a deprivation of property

owned by the LLC.  However, even assuming an immediate right to possess the property is enough, neither High Plains nor Ulrich had such right—while High Plains had the right to seek a return of its capital contribution upon request, it had not yet exercised this right.  Indeed, the complaint only alleges High Plains and Ulrich "*intended* to exercise their right to [a] return of [High Plains'] capital contribution."  (Appellants' App'x at 11 (emphasis added).)

[15] The parties say the judge dismissed ECCO Plains takings claim for both lack of jurisdiction and failure to state a claim.  While the judge's oral ruling suggests this, his written order dismisses it for failure to state a claim.

- 19 -

without due process of law" in violation of the Fifth Amendment's Due Process Clause. *Norman*, 429 F.3d at 1095. While the United States Court of Federal Claims ordinarily lacks jurisdiction over due process claims under the Tucker Act, 28 U.S.C. § 1491, it does "have jurisdiction over illegal exaction claims 'when the exaction is based on an asserted statutory power.'" *Id.* (quoting *Aerolineas Argentinas, Inc.*, 77 F.3d at 1573); *see also Ontario Power Generation, Inc. v. United States*, 369 F.3d 1298, 1301 (Fed. Cir. 2004) (Tucker Act's waiver of government's sovereign immunity includes illegal exaction claims); *Casa de Cambio Comdiv S.A., de C.V. v. United States*, 291 F.3d 1356, 1363 (Fed. Cir. 2002) ("[T]here is no jurisdiction under the Tucker Act over a Due Process claim unless it constitutes an illegal exaction.").

According to the complaint, the FDIC acted under its receivership powers—an "asserted statutory power"—to take control of the cattle proceeds which otherwise would have gone directly to ECCO Plains. *See* 12 U.S.C. § 1821(d). The FDIC thereby put ECCO Plains' money "in its pocket" (although it later took that money out of its metaphorical pocket and applied it to English's loans). Thus, ECCO Plains' takings claim is best seen as an illegal exaction claim subject to Tucker Act jurisdiction.[16]

---

[16] The complaint seeks both compensatory damages and a constructive trust. It is unclear which type of relief goes to which claims. Nevertheless, we will assume the relief ECCO Plains is seeking on the takings claim is limited to a constructive trust.

"A constructive trust is a legal fiction, an equitable remedy devised to prevent unjust enrichment and compel restitution of property that in equity and good conscience does not belong to the Defendant." *See United States v. Andrews*, 530 F.3d 1232, 1237

(Continued . . .)

We **REVERSE** the district court's dismissal of High Plains and Ulrich's negligence and conversion claims and ECCO Plains' Fifth Amendment Takings claim for failure to state a claim and **REMAND** to the district court to dismiss these claims for lack of jurisdiction.[17]

_____

(10th Cir. 2008) (quotations omitted). "The recipient of the property, the constructive trustee, is deemed to hold legal title to the property for the benefit of the claimant, and it is the obligation of the constructive trustee to surrender the property to the claimant." *Id.*; *see also Lawry v. Palm*, 192 P.3d 550, 562 (Colo. App. 2008) ("A constructive trust is a flexible equitable remedy that may be imposed to prevent unjust enrichment . . . . By imposing a constructive trust, a court awards the successful plaintiff a personal order requiring the defendant to transfer specific property to the plaintiff.") (citations omitted).

A constructive trust is generally imposed upon specific assets. *Andrews*, 530 F.3d at 1237; *Lawry*, 192 P.3d at 562. Here, the proceeds from the cattle sale were long gone before the litigation was started. Thus, regardless of their convenient pleading, High Plains and Ulrich were and are seeking money damages from the government, not a constructive trust or other form of equitable relief.

[17] The government relies on 12 U.S.C. § 1821(j) which prohibits a court from "restrain[ing] or affect[ing] the exercise of powers or functions of [FDIC] as a conservator or a receiver." This statute only applies to a claim for injunctive relief against FDIC; this case seeks money from the United States. In any event, reliance on the statute is unnecessary as jurisdiction is otherwise defeated.