# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
October 6, 2016 Session

## CHARLES GROGAN v. DANIEL UGGLA, ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Williamson County**
**No. 2011-443      James G. Martin, III, Judge**

———————————————————

## No. M2014-01961-SC-R11-CV

———————————————————

In this case, the plaintiff Charles Grogan was injured when he fell from a second story deck that had not been properly constructed but had recently been inspected by the defendant Jerry Black, a home inspector hired by homeowner Daniel Uggla. Defendant Black was a franchisee of defendant Pillar to Post, Inc. The trial court granted summary judgment in favor of the defendants, and the Court of Appeals affirmed the trial court. We granted this appeal to consider as a matter of first impression in this state whether a home inspector is subject to liability for the physical harm suffered by a social guest of the home inspector's client. We conclude that the defendants successfully negated essential elements of the claims of negligent misrepresentation and negligent inspection such that summary judgment was appropriate in this case. Accordingly, the Court of Appeals and the trial court judgments are affirmed.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed

ROGER A. PAGE, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, JJ. joined. HOLLY KIRBY, J., filed a separate opinion concurring in part, dissenting in part. SHARON G. LEE, J., filed a dissenting opinion.

Matthew E. Wright, Franklin, Tennessee; and Edmund J. Schmidt III, Nashville, Tennessee, for the appellant, Charles Grogan.

Daniel W. Olivas, Nashville, Tennessee, and Brian S. Faughnan, Memphis, Tennessee, for the appellees, Jerry Black and Pillar To Post, Inc.

Leslie Curry Bay, Nashville, Tennessee; and Harry S. Rosenthal, Ambler, Pennsylvania, for the Amicus Curiae, American Society of Home Inspectors.

## OPINION

## I. Facts and Procedural History

The basic facts of this case are simply explained. Before Daniel Uggla purchased a home in Franklin, Tennessee, he, through his brother, hired a home inspector to inspect the house. The home inspector noted problems with the deck flooring of the second story deck but not with the railing. As a condition of the sale, the former homeowners replaced the deck flooring. The contractor who replaced the flooring did not work on the deck railing. During a social gathering hosted by Mr. Uggla after moving into the home, the plaintiff fell from the second story deck when the deck railing collapsed, and he sustained severe injuries. A forensic examination of the railing showed that it had been improperly constructed using interior finishing nails rather than galvanized nails. The plaintiff subsequently filed a complaint against the homeowner, the previous owner, the contractor who had replaced the deck boards, the home builder, and the home inspector. The home inspector and the home inspection franchise are the defendants now before us.[1]

In the plaintiff's second amended complaint, he alleged that the defendants

knew or in the exercise of reasonable care as a professional inspector should have known that the second floor rear exterior deck railing was constructed with interior finishing nails in violation of local, state[,] and national building codes, and constituted an unreasonable risk of harm since it could not withstand reasonable force to prevent someone from falling from the second floor exterior deck.

The plaintiff further alleged that the defendants "did not perform a pressure test in order to determine the amount of force that the second floor rear exterior deck railing could have withstood in compliance with applicable building codes." Finally, the plaintiff alleged that the defendants "failed to report that the second floor exterior deck railing was negligently constructed in violation of local, state[,] and national building codes and constituted an unreasonable risk of harm" and that their negligence caused the plaintiff's injuries.

In the course of the litigation, Daniel Uggla testified by deposition that he wanted the property inspected "to make sure that everything is okay, up-to-date. If something

---

[1] The record shows that the home builder, the previous homeowner, and the present homeowner settled the claims against them, and the plaintiff voluntarily dismissed his claim against the contractor who replaced the deck boards.

was not right, I wanted it fixed. . . . [and to] [m]ake sure it was a good buy as well." He testified that after the inspection, his brother told him that the inspector "recommend[ed] to change the . . . deck. Said that he didn't have to. But [the inspector] said it looked old . . . . [but] [d]idn't ever say it was dangerous." His brother Mike Uggla testified that he wanted to have an inspection to protect against "scenarios of termites . . . carbon monoxide . . . structural damage . . . to make sure you're buying . . . a good quality house." He agreed that he relied on the inspector to tell him "what needed to be done."

The defendant home inspector testified in his deposition that his "job is to provide information to [his] client so that they can make an informed decision about the house that they want to buy." He stated that he did not see any visual damage to the deck railings and that the deck railings felt "firm and well anchored." He also stated that if there had been movement, he would have reported it as "a safety risk." The defendant home inspector agreed in response to a question on cross-examination that one purpose of a home inspection is to assure the safety of the occupants of the home. In his report, he noted warping on the deck, and as a result the Ugglas requested that the owners of the home have the deck flooring replaced. The defendant home inspector confirmed that he was not a building codes inspector.

After filing an answer denying all liability, the defendants moved for summary judgment. In the motion for summary judgment, the defendants characterized the plaintiff's claim as negligent misrepresentation and argued that reliance on the home inspection report was a required component of such a claim, a requirement not met by the plaintiff. The defendants added that "as a matter of law, home inspectors do not owe any duty to third parties like Mr. Grogan." The trial court granted summary judgment to the defendants.

The plaintiff appealed to the Court of Appeals and argued that either Restatement (Second) of Torts section 311 (1965) (Negligent Misrepresentation Involving Risk of Physical Harm)[2] or Restatement (Second) of Torts section 324A (1965) (Liability to

---

[2] Restatement (Second) of Torts section 311 states:

> (1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results
>
> (a) to the other, or
>
> (b) to such third persons as the actor should expect to be put in peril by the action taken.

Third Person for Negligent Performance of Undertaking)[3] provided him a cause of action and that material facts were in dispute such that summary judgment was inappropriate. *See Grogan v. Uggla*, No. M2014-01961-COA-R3-CV, 2015 WL 5601995, at \*4 (Tenn. Ct. App. Sept. 22, 2015), *perm. app. granted* (Tenn. Feb. 18, 2016). The Court of Appeals rejected the plaintiff's arguments, reasoning that section 324A was not applicable due to the limitations on the scope of a home inspector's duty as defined by the Tennessee Home Inspector License Act, 2005 Tenn. Pub. Acts, c. 65, and the contract between the defendants and their client, Mr. Uggla. *Id.* at \*4-5. The Court of Appeals declined to apply section 311 because it has not previously been adopted in this state. *Id.* at \*6. The Court of Appeals then undertook an analysis of the common law factors for determining whether a duty of care had arisen and concluded that it had not. *Id.* at \*6-7. Finally, the Court of Appeals determined that the facts alleged by the plaintiff to be disputed and material did not affect the conclusion that the defendants did not owe the plaintiff a duty of care. *Id.* at \*8. We accepted plaintiff's application for permission to appeal.

## II. Standard of Review

This is an appeal from the trial court's grant of the defendants' motion for summary judgment. As such, we review the trial court's ruling de novo, with no presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Under Tennessee Rule of Civil Procedure 56.04, summary judgment is appropriate "if the

---

(2) Such negligence may consist of failure to exercise reasonable care

(a) in ascertaining the accuracy of the information, or

(b) in the manner in which it is communicated.

[3] Restatement (Second) of Torts section 324A states:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We must determine whether the moving party satisfied its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015) (emphasis omitted).

## III. Analysis

In this case, there is a fundamental disagreement between the plaintiff and the defendants over the cause of the action raised in the complaint. The trial court identified the cause of action as negligent misrepresentation. The trial court granted summary judgment because the defendants affirmatively negated essential elements of the plaintiff's complaint, namely by showing that the plaintiff was not a person for whose benefit the defendants provided information and that the plaintiff did not rely on the defendants' information in any form. The Court of Appeals, however, framed the cause of action in question as one of ordinary negligence, a broader and more general cause of action than negligent misrepresentation, and it relied on the common law factors in its analysis for determining when a duty is owed.

In his second amended complaint, the plaintiff alleged that the defendant home inspector knew or should have known that the deck railing did not meet applicable building codes and "constituted an unreasonable risk of harm since it could not withstand reasonable force to prevent someone from falling"; that the defendant home inspector "did not perform a pressure test"; that the defendant home inspector "failed to report that the second floor exterior deck railing was negligently constructed in violation of local, state[,] and national building codes and constituted an unreasonable risk of harm"; and that these actions were the proximate cause of the plaintiff's injuries.

In *U.S. v Neustadt*, the United States Supreme Court reasoned that negligence in an inspection underlying a report was part of a claim of negligent misrepresentation. *Neustadt*, 366 U.S. 696, 706-07 (1961). Several years later, however, the Court acknowledged that a plaintiff might allege a separate cause of action when the negligent conduct is separate from the communication of misinformation. *See Block v. Neal*, 460 U.S. 289, 296-97 (1983). The United States Court of Appeals for the Eighth Circuit has interpreted *Block v. Neal* to mean that a plaintiff might allege both a negligent inspection and negligent misrepresentation. *See Appley Bros. v. U.S.*, 7 F.3d 720, 728 (8th Cir. 1993). However, as the Tenth Circuit points out, the issue in *Block v. Neal* was that the governmental authority was also supervising the construction of the home, so the plaintiff

alleged both negligent supervision and negligent misrepresentation, with the negligent inspection being part of each claim. *See Ecco Plains, LLC v. U.S.*, 728 F.3d. 1190, 1196 (10th Cir. 2013). In this case, the plaintiff has presented allegations separate from communication of misinformation. Therefore, we conclude that the plaintiff's complaint fairly raises both negligent misrepresentation (by way of his allegation that the defendant home inspector failed to report negligent construction) and ordinary negligence (by way of his other allegations that amount to a claim that the defendant home inspector negligently performed the inspection).

## A. Negligent Misrepresentation

The plaintiff in this case alleges negligent misrepresentation involving the risk of physical harm,[4] a tort that we have neither specifically rejected nor adopted in this state. The Restatement (Second) of Torts section 311 gives the following definition:

> (1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results
>
> (a) to the other, or
>
> (b) to such third persons as the actor should expect to be put in peril by the action taken.
>
> (2) Such negligence may consist of failure to exercise reasonable care

---

[4] The concurring opinion contends that the plaintiff has not asserted a claim of negligent misrepresentation but rather a failure-to-warn claim. Home inspectors are professionals in the business of "sell[ing] their expert analysis and opinion." *Russell v. Bray*, 116 S.W.3d 1, 6 (Tenn. Ct. App. 2003). In other words, they are in the business of obtaining and communicating information, and negligent misrepresentation may be defined as the negligent failure to "use due care in obtaining and communicating information upon which [the recipient] may reasonably be expected to rely," *Neustadt*, 366 U.S. at 706, either in the course of his economic affairs as encompassed by the Restatement (Second) of Torts section 552 (1977) or in any other situation that results in physical harm under Restatement (Second) of Torts section 311. Thus, negligent misrepresentation is the gravamen of the plaintiff's contention that the home inspector failed to report the defect. In addition, even if a failure-to-warn claim were presented by the complaint, such a claim would be subsumed in the negligent inspection claim because the same duty analysis would apply. *See Bradshaw v. Daniel*, 854 S.W.2d 865, 872-73 (Tenn. 1993) (imposing "upon a physician an affirmative duty to warn identifiable third persons in the patient's immediate family against foreseeable risks emanating from a patient's illness" based upon "the existence of the physician-patient relationship.").

(a) in ascertaining the accuracy of the information, or

(b) in the manner in which it is communicated.

While we do not foreclose the possibility of recognizing the tort of negligent misrepresentation involving physical harm, we decline to do so in this case because the plaintiff has failed to allege that the defendant negligently gave false information. Section 311 "by its own terms requires an affirmative misstatement, not just a non-disclosure." *McLachlan v. New York Life Ins. Co.*, 488 F.3d 624, 630 (5th Cir. 2007); *see also Randi W. v. Muroc Joint Unified Sch. Dist.*, 929 P.2d 582 (Cal. 1997) (holding that defendants' letters of recommendation "constituted affirmative representations" that "were false and misleading"); *Bd. of Educ. Of City of Chicago v. A, C and S, Inc.*, 546 N.E.2d 580, 593 (Ill. 1989) (instructing that on remand the plaintiff had to show that "the defendants knew or should have known of the dangerous propensity" of their product and that "statements made were to induce the plaintiffs to purchase the products"); *Bloskas v. Murray*, 646 P.2d 907 (Colo. 1982) (holding that the evidence was sufficient to submit the claim of negligent misrepresentation to the jury when a doctor lied about having participated in ankle replacement surgery in the past and by assuring the patient that his concern about amputation was unfounded despite there being a risk of amputation); *Hall v. Ford Enterprises, Ltd.*, 445 A.2d 610 (D.C. 1982) (holding that the statement "protected by Scott Detective Agency, Ltd." on a decal on the front of an apartment building was not a guarantee of safety and that the plaintiff "failed to establish the communication of false information"). Although the comments to section 311 include an illustration about a boiler inspection, that illustration involves the inspector issuing a certificate of safety, in other words, an affirmative false statement that the boiler was safe, when in fact it was not. Restatement (Second) of Torts § 311, cmt. d. The undisputed material facts in this case are that the home inspector failed to discover any defect in the deck railing and that as a result he did not report any defect. The home inspector did not affirmatively state that the deck railing was safe. Thus, even if we were to adopt section 311, the facts here foreclose the possibility of the plaintiff proving that the defendant home inspector gave *false* information to his client. *See* Restatement (Second) of Torts § 311(1); *see Smith v. Brutger Companies*, 569 N.W.2d 408, 413-15 (Minn. 1997) (affirming summary judgment on the plaintiff's misrepresentation claim without affirmatively rejecting or adopting section 311).[5]

---

[5] We have recognized the tort of negligent misrepresentation in cases involving pecuniary harm. *John Martin Co., Inc. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991) (citing Restatement (Second) of Torts section 552 ). "Tennessee has adopted the Restatement (Second) of Torts § 552 as the guiding principle in negligent misrepresentation actions against other professionals and business

- 7 -

## B. Negligent Inspection

The plaintiff has also alleged ordinary negligence in the form of a negligent inspection. The elements of negligence are well-established:

> In order to establish a prima facie claim of negligence, basically defined as the failure to exercise reasonable care, a plaintiff must establish the following essential elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause."

*Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)).

"Duty is a legal obligation to conform to a reasonable person standard of care in order to protect others against unreasonable risks of harm." *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008). The dissent contends that the defendants' conduct in this case should be analyzed based on the factors considered in *Satterfield*[6]; however, the *Satterfield* Court quoted with approval the principles applicable to liability for physical harm contained in the Restatement (Third) of Torts:

---

persons." *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 595 (Tenn. 1991). However, the plaintiff has not alleged pecuniary harm in this case. In addition, relief under section 552 requires justifiable reliance on the part of the plaintiff, and contrary to the plaintiff's assertion that the reliance element is met when a home inspector's client relies on the home inspector's information, *Bethlehem Steel* indicates that it is the injured plaintiff who is the party that must show reliance on the information. *Id.* at 596; *see also John Martin Co., Inc.*, 819 S.W.2d at 431-32.

[6] The *Satterfield* court listed the following non-exclusive factors for determining the existence of a duty of care:

> (1) the foreseeable probability of the harm or injury occurring; (2) the possible magnitude of the potential harm or injury; (3) the importance or social value of the activity engaged in by the defendant; (4) the usefulness of the conduct to the defendant; (5) the feasibility of alternative conduct that is safer; (6) the relative costs and burdens associated with that safer conduct; (7) the relative usefulness of the safer conduct; and (8) the relative safety of alternative conduct.

*Satterfield*, 266 S.W.3d at 365 (citations omitted).

Even when the actor and victim are complete strangers and have no relationship, the basis for the ordinary duty of reasonable care . . . is conduct that *creates* a risk to another. Thus, a relationship ordinarily is not what defines the line between duty and no-duty; conduct *creating* risk to another is.

*Id*. at 362–63 (quoting the Restatement (Third) of Torts: Liab. for Physical and Emotional Harm § 37, Reporter's Note, cmt. c (October 2017 Update) (hereinafter "Restatement (Third) of Torts")) (emphasis added). Section 37 of the Restatement (Third) of Torts states that "[a]n actor whose conduct has not created a risk of physical or emotional harm to another has no duty of care to the other unless a court determines that one of the affirmative duties provided in [other sections of the Restatement] is applicable."

In the comments to section 37, the authors of the Restatement give an illustration that mirrors this case: an inspector fails to identify a source of harm during an inspection, and a person is injured by that source of harm. Restatement (Third) of Torts § 37, cmt. c. In the Restatement's illustration, the inspector's "conduct did not create a risk of harm" to the injured person, so whether the inspector had a duty of care would be governed by the Affirmative Duties chapter of the Restatement (Third) of Torts, which includes an update to Restatement (Second) of Torts section 324A, Liability to a Third Person for Negligent Performance of an Undertaking.[7] *Id.*, illus. 1. Here, the inspector failed to identify a source of harm, and an injury resulted; thus, based on the reasoning of the Restatement, the defendant home inspector did not create a risk of harm and therefore whether he has a duty of care would be analyzed under theories of affirmative duties rather than the more generalized duty of care evaluated by the *Satterfield* duty factors.

This Court has not previously considered a case involving an allegedly negligent home inspection. In reviewing cases from other jurisdictions, if we narrow our focus to cases involving home inspections, we find few involving potential liability to a third party for a negligently-performed home inspection. *See, e.g., Oliveira v. Jensen*, No. HHDCV136045373S, 2015 WL 9809752, at *11 (Conn. Super. Ct. Dec. 7, 2015) (defendant home inspection company failed to establish that it was entitled to summary judgment).

---

[7] The parties have not suggested that this Court should adopt Restatement (Third) of Torts section 43, the update to Section 324A. For the purposes of this case, adoption of section 43 would not change the outcome, and therefore, it is unnecessary at this time to decide whether it should be adopted, especially when the caselaw relied upon herein is based on section 324A.

However, if we broaden our focus slightly to include other types of contracted inspections of property, we find numerous comparable cases. In these cases, courts have considered whether one who assumes a contractual duty to inspect the property of another may be held liable for physical injuries suffered by a third party. *See generally* Frank J. Wozniak, Annotation, *Breach of Assumed Duty to Inspect Property as Ground for Liability to Third Party*, 13 A.L.R. 5th 289 (originally published in 1993) (most recent case from 2014) (collecting cases). These cases involve a wide range of inspections, such as cases in which an insurance company, a liability and maintenance company, a franchisor, or the like, has inspected elevators, escalators, boilers, hotels, trailer parks, apartment buildings, stores, gaslines, appliances, trees, docks and piers. *Id.* at § 2[a] Summary and comment—Generally.

While the facts and results vary widely, the majority of these negligent-inspection cases utilize Section 324A of the Restatement (Second) of Torts as a framework for determining whether a particular defendant may be held liable to a third party for physical harm resulting from an allegedly negligent contractual inspection.[8] *Id.*; *see also id.* at § 2[b] Summary and comment—Practice pointers (offering practice advice gleaned from the collected cases pursuant to Section 324A). Indeed, the illustrations to Section 324A include two negligent-inspection cases.[9]

---

[8] Numerous state courts have cited Section 324A in their analysis of negligent inspection claims. *See, e.g., Commercial Union Ins. Co. v. DeShazo*, 845 So. 2d 766, 769 (Ala. 2002); *Van Biene v. ERA Helicopters, Inc.*, 779 P.2d 315, 322 (Alaska 1989); *Patton v. Simone*, 626 A.2d 844, 849 (Del. Super. Ct. 1992); *Huggins v. Aetna Cas. & Sur. Co.*, 264 S.E.2d 191, 192 (Ga. 1980) (describing Section 324A as the "majority rule" in negligent inspection cases); *Thompson v. Bohlken*, 312 N.W.2d 501, 507 (Iowa 1981) (adopting Section 324A in negligent inspection cases); *Gooch v. Bethel A.M.E. Church*, 792 P.2d 993, 998 (Kan. 1990); *Smith v. Allendale Mut. Ins. Co.*, 303 N.W.2d 702, 706 (Mich. 1981); *In re Norwest Bank Fire Cases*, 410 N.W.2d 875, 878 (Minn. Ct. App. 1987); *Brown v. Michigan Millers Mut. Ins. Co.*, 665 S.W.2d 630, 632 (Mo. Ct. App. 1983); *Dieter v. Hand*, 333 N.W.2d 772, 775 (Neb. 1983); *Corson v. Liberty Mut. Ins. Co.*, 265 A.2d 315, 318-19 (N.H. 1970); *Beury v. Hicks*, 323 A.2d 788, 789-90 (Pa. Super. Ct. 1974); *Schoenwald v. Farmers Co-op. Ass'n of Marion*, 474 N.W.2d 519, 520-21 (S.D. 1991); *Seay v. Travelers Indem. Co.*, 730 S.W.2d 774, 775-76 (Tex. App. 1987); *Murphy v. Sentry Ins.*, 95 A.3d 985, 991-97 (Vt. 2014). The home inspection case cited above similarly analyzes the potential liability of the defendant home inspector under the Section 324A framework. *See Oliveira*, 2015 WL 9809752, at *6 (relying on *Gazo v. Stamford*, 765 A.2d 505, 510 (Conn. 2001) (citing § 324A of the Restatement (Second) of Torts)).

[9] The illustrations in the comments to Section 324A include the following:

2. The A Telephone Company employs B to inspect its telephone poles. B negligently inspects and approves a pole adjoining the public highway. Because of its defective condition the pole falls upon and injures a traveler upon the highway. B is subject to liability to the traveler.

This Court has likewise applied Section 324A of the Restatement (Second) of Torts. *See Biscan v. Brown*, 160 S.W.3d 462, 483 (Tenn. 2005) (holding that a parent voluntarily assumed duty of reasonable care as to minors who attended his daughter's party at the parent's home); *see also Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886, 898 n.12 (Tenn. 2016) (observing that this Court has cited section 324A of the Restatement (Second) of Torts "approvingly" but noting that the defendant in that case did not undertake any duty as to the plaintiff). The underpinning of Section 324A is a "well-worn" principle that Tennessee courts have applied "in a variety of factual contexts," namely, "[o]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully." *Bennett v. Trevecca Nazarene Univ.*, 216 S.W.3d 293, 300 (Tenn. 2007) (holding that premises owner had assumed duty to provide information to independent contractor regarding voltage of malfunctioning switchgear in electrical equipment, so premises owner had duty of reasonable care to ensure that the information provided was accurate); *see also Stewart v. State*, 33 S.W.3d 785, 793 (Tenn. 2000) (citing same principle); *Marr v. Montgomery Elevator Co.*, 922 S.W.2d 526, 529 (Tenn. Ct. App.1995) (same); *Ellington v. Jackson Bowling & Family Fun Ctr.*, L.L.C., No. W2012-00272-COA-R3-CV, 2013 WL 614502, at *11 (Tenn. Ct. App. Feb. 19, 2013) (citing *Biscan,* 160 S.W.3d at 483); *Burks v. Kroger Co.*, No. M2008-02664-COA-R3-CV, 2009 WL 4059145, at *9 (Tenn. Ct. App. Nov. 23, 2009) (applying Section 324A and stating that "the provision has been extensively cited and relied upon in cases addressing the liability of a person for a breach of the assumed duty of reasonable care."); *Collins v. Arnold*, No. M2004-02513-COA-R3-CV, 2007 WL 4146025, at *14 (Tenn. Ct. App. Nov. 20, 2007) (holding Section 324A applicable "regarding liability under a duty that is voluntarily assumed" and that the trial court erred in refusing to give jury instruction based on Section 324A); *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 823 (Tenn. 2008) (applying Section 324A, holding there was a fact issue as to whether the defendants undertook the duty to take charge of a "helpless" person).

* * *

> 4. A Company employs B Company to inspect the elevator in its office building. B Company sends a workman, who makes a negligent inspection and reports that the elevator is in good condition. Due to defects in the elevator, which a proper inspection would have disclosed, the elevator falls and injuries C, a workman employed by A Company. B Company is subject to liability to C.

Restatement (Second) of Torts § 324A, illus. 2 and 4. We note that the defendants contend that Section 324A has no application to cases involving commercial transactions. Illustrations such as the one quoted above in the comments to Section 324A, as well as the wide variety of negligent-inspection cases that utilize the Section 324A structure for analysis, demonstrate that this contention has no merit.

Section 324A of the Restatement (Second) of Torts may be applied where a party has undertaken to provide services to another.[10] It provides structure for determining potential liability to a third party who has suffered physical harm from the negligent performance of the undertaking:

§324A Liability to Third Person for Negligent Performance of Undertaking

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A. "[T]he question of whether one has assumed a duty to act is . . . a question of law." *Stewart,* 33 S.W.3d at 793.

The defendants insist that there was no undertaking in this case that would implicate Section 324A. They argue that a home inspection is not a safety inspection; rather, the purpose of home inspections is merely to provide information to facilitate a real estate transaction. They note that the Tennessee statutes and regulations regarding home inspections specify that the inspection is visual and not a building code inspection. In response, the plaintiff points to the same statutes and regulations, contending that they show that home inspections include safety considerations. He emphasizes that Tennessee regulations specifically require the home inspector to inspect "[d]ecks, balconies,. . . and applicable railings." Tenn. Comp. R. & Regs. 0780-05-12-.10(13)(a)(4.).

---

[10] The comments to Section 324A explain that the rule stated in Section 324A "parallels the one stated in § 323, as to the liability of the actor to the one to whom he has undertaken to render services." Restatement (Second) of Torts § 324A, cmt a.

- 12 -

In this case, we need not make a broad determination regarding whether Tennessee statutes and regulations mandate that a home inspection include safety considerations. As outlined in the recitation of the facts, the home inspector in this case gave deposition testimony in which he conceded that one of the goals of a home inspection is to make sure that the home is safe for the persons who will occupy it and that he specifically undertook to inspect the deck railings in the home purchased by Mr. Uggla, by visual observation and physical movement, to determine if they would be safe. But the boundaries of the defendants' undertaking are circumscribed by the parameters of the evidence, in particular the inspection agreement and the deposition testimony, in addition to the pertinent statutes. Although the plaintiff's claim against the defendants is properly analyzed under Section 324A, the plaintiff is not entitled to relief.

Section 324A describes the services rendered as services which the actor should recognize would be necessary for the protection of a third party. Under Restatement section 324A, a duty can only be imposed "to the extent actually assumed by the defendant." *See Homer v. Pabst Brewing Co.*, 806 F.2d 119, 121 (7th Cir. 1986) (applying Illinois law under the voluntary undertaking doctrine); *see also Evans v. Arise Inc.*, 2008 WL 5429835 (W.D. Tenn. 2008) (applying Tennessee law); *Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.*, 556 N.E.2d 1093, 1096 (N.Y. 1990). In other words, "[t]he foundation of the . . . rule is that the defendant specifically has undertaken to perform the task that he or she is charged with having performed negligently." *Patentas v. U.S.*, 687 F.2d 707 (3rd Cir. 1982). In this case, the evidence of the defendant's undertaking includes the agreement between himself and the Ugglas, the deposition testimony, and the relevant statutes and regulations. *See Eaves Brooks Costume Co.*, 556 N.E.2d at 1096 ("While [the] plaintiff is not bound by the provisions of a contract to which it is not a party, the limited scope of defendants' undertaking is nonetheless relevant in determining whether a tort duty to others should arise from their performance of the contractual obligations.").

The complaint in this case alleges that the defendant home inspector knew or should have known that the deck railing *did not meet applicable building codes*. In other words, the undertaking according to the plaintiff's allegations was that the home inspector inspected for building code violations. Indeed, in his response to the defendant's motion for summary judgment, the plaintiff specified that the defendant's failure to identify defective nails that violated the local building code and his failure to determine that the railing could not withstand the 200 pounds of lateral pressure required by the local building code amounted to a negligent home inspection. Thus, under Section 324A, the plaintiff is arguing that the defendant voluntarily assumed a duty to protect the plaintiff by performing a building codes inspection on the deck railing and should be subject to liability for the plaintiff's physical harm resulting from the defendant's failure to exercise reasonable care in performing the building codes inspection. However, based

- 13 -

on the statutes, regulations, deposition testimony, and agreement between the parties, the defendant home inspector did not undertake a building codes inspection. The agreement between the defendant home inspector and his client states that the inspection is visual only and not a building code inspection. The defendant home inspector testified that he is not a building codes inspector. In addition, the statutes state that a home inspection is not "a compliance inspection for building codes." Tenn. Code Ann. § 62-6-302(3)(B) (2009). A building codes inspection was outside the scope of the services rendered by the defendant home inspector, and he cannot be held liable for failure to perform a building codes inspection with reasonable care.

The agreement includes other language that limits the scope of the undertaking:

- The Inspector does not offer an opinion as to the advisability or inadvisability of the purchase of the property, its value or its potential use.

- [I]t is a reasonable effort to disclose the condition of the house based on a visual inspection.

- Conditions beyond the scope of the inspection will not be identified. No engineering services are offered.

- This Inspection Report is based on the condition of the Property existing and apparent as of the time and date of the inspection. Not all conditions may be apparent on the inspection date due to weather conditions, inoperable systems, inaccessibility of areas of the Property, etc. A defect that was apparent on any date prior to the inspection date may not be apparent on the inspection date. Without dismantling the house or its systems, there are limitations to the inspection. Throughout any inspection, inferences are drawn which cannot be confirmed by direct observation. Clues and symptoms often do not reveal the extent or severity of problems. Therefore, the inspection and subsequent Inspection Report may help reduce the risk of purchasing the property; however, an inspection does not eliminate such risk nor does the Inspector assume such risk. While some of the less important deficiencies are addressed, an all inclusive list of Minor building flaws is not provided. Inspector is neither responsible nor liable for the non-discovery of any patent or latent defects in materials, workmanship, or other conditions of the Property, or any other problems which may occur or may become evident after the inspection time and date. Inspector is neither an insurer nor guarantor against defects in the building and improvements, systems or components inspected. Inspector makes no warranty, express or implied, as to the fitness for use or condition of the

systems or components inspected. Inspector assumes no responsibility for the cost of repairing or replacing any unreported defects or conditions, nor is Inspector responsible or liable for any future failures or repairs.

In addition, the defendant home inspector testified that the agreement was to inspect the property *for the client*. The inspection agreement evidences an expectation by the home inspector that the inspection was for the benefit of the client only. The agreement is between the defendant home inspector and his client and is addressed to the client while also noting that the inspection report would be provided to the client's representative and his real estate agent. The agreement states that "[t]he inspection report is provided solely for the benefit of the Client and may not be relied upon by any other person." The statutes, rules, and regulations governing home inspections also indicate that inspections are for the client's benefit. For example, the standards of practice state that a home inspection "performed according to this rule shall provide the *client* with an understanding of the property conditions at the time of the home inspection." Tenn. Comp. R. & Regs. 0780-05-12-.10(3)(a) (emphasis added). Tennessee Code Annotated section 62-6-308 (2009 & 2017 Supp.) provides that a home inspector can be disciplined for failing to disclose to his client any financial interest or relationship that would affect the client's interest and for disclosing the results of a home inspection to anyone without the client's approval. Thus, the defendant home inspector's duty as circumscribed by the agreement and the relevant statutes is owed to the client. While the defendant home inspector agreed during his deposition that the inspection was partly to identify safety risks for the eventual occupiers of the house, nothing in the defendant home inspector's deposition testimony or any other evidence presented indicated that he undertook an additional duty to protect third parties.

The defendant home inspector did not undertake a building codes inspection, and there is no evidence that he voluntarily assumed a duty beyond what he owed to his client. Therefore, we conclude that the defendants did not render services that they knew or should have known was for the protection of third parties because their services were for the benefit of their client alone and that they therefore did not assume a duty to the plaintiff. Accordingly, the defendants have negated the essential element of duty, and summary judgment was appropriate.

## CONCLUSION

We conclude that summary judgment on the negligent misrepresentation claim was appropriate because the plaintiff has not alleged facts that would constitute an actionable claim of negligent misrepresentation involving the risk of physical harm. We also conclude that the defendants did not owe or assume a duty of care toward the plaintiff and thus that summary judgment was appropriate with regard to the negligent

inspection claim. Therefore, we affirm the decision of the trial court and the Court of Appeals. Costs are assessed to the plaintiff, Charles Grogan.

_____
ROGER A. PAGE, JUSTICE