IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 7, 2024 Session

## TEZOZOMOC ALCANTAR v. DOLGENCORP, LLC

Appeal from the Circuit Court for Davidson County
No. 21C760  Lynne T. Ingram, Judge
_____

No. M2023-01143-COA-R3-CV
_____

A shopper slipped and fell on a slippery liquid that was on a convenience store floor, resulting in injuries.  The shopper sued the property owner.  The property owner sought summary judgment, arguing the shopper had not provided sufficient evidence to establish how long the liquid had been on the floor prior to the slip and fall.  The trial court granted summary judgment.  We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

JEFFREY USMAN, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KRISTI M. DAVIS, J., joined.

Michael W. Gaines and Tim L. Bowden, Goodlettsville, Tennessee, for the appellant, Tezozomoc Alcantar.

Alston A. Peek, Brentwood, Tennessee, for the appellee, Dolgencorp, LLC.

**OPINION**

I.

On March 30, 2020, Appellant Tezozomoc Alcantar visited one of Appellee Dolgencorp LLC's (Dollar General) retail locations in Old Hickory, Tennessee.  Mr. Alcantar intended to purchase potato chips for his young grandson.  While walking through the store, Mr. Alcantar, who had been in the store for a few minutes, slipped on liquid that he had not noticed, fell to the ground, and sustained injuries.

Mr. Alcantar cried out in pain.  A Dollar General employee immediately rushed "around the corner from the adjoining aisle" and checked on Mr. Alcantar, who informed

the employee that he fell on "something slick." The employee responded that the slick substance was "possibly milk" because there was "a big spill on the next aisle." Mr. Alcantar promptly took two pictures of the spillage "[w]ithin a minute or two," noting that they were taken essentially as soon as he got up and walked around the corner to the other aisle. Set forth below, the photograph of the aisle where he fell is labeled exhibit two and the photograph of the adjacent aisle is labeled exhibit three:[1]



Mr. Alcantar sued Dollar General in the Circuit Court of Davidson County. As bases for liability, Mr. Alcantar asserted premises liability in connection with a dangerous condition and "other acts of negligence and breaches of duty." Mr. Alcantar alleged "as a proximate result of one or more acts of negligence for failure to warn or make safe a dangerous condition, failure to prudently clean up a wet substance, failure to inspect, negligent acts, failure to adequately train employees, and other breaches of duty owed by the Defendant" that he had been injured. Mr. Alcantar noted that his injuries include a "right knee injury and neck sprain" as well as "other injuries." In his prayer for relief, Mr. Alcantar requested an award of $150,000. Dollar General denied liability.

Discovery commenced. Mr. Alcantar deposed Cathy Cain, who had been the manager of the Old Hickory Dollar General store on the date of Mr. Alcantar's accident. Ms. Cain described Dollar General's standard operating procedure for cleaning up spills and indicated that all new employees were trained to use this method. She indicated that employees were first to place caution signs indicating a wet floor; the signs were to remain up during the cleaning process. The signs were to be placed "right in the aisle where it's happened" or "on both sides if it's leaked through." For the actual clean-up, she testified

---

[1] Exhibit two includes markings made by the parties during depositions.

that employees were to use specific gray-colored "pigment towels." These special gray towels were used because of their absorbent material and were to be laid on the floor. Ms. Cain indicated that the signage and towels needed for the clean-up were approximately 50 to 60 feet from where Mr. Alcantar fell.

Though she was the manager of this store, Ms. Cain was off from work and, thus, was not present when Mr. Alcantar fell. She did, however, discuss the matter with store employees of the Old Hickory Dollar General store. She testified regarding her conversation with the manager on duty in her absence, Christian Alvarado. Mr. Alvarado noted an earlier attempted theft and that another customer, not Mr. Alcantar, had indicated that there was milk on the floor. Mr. Alvarado told Ms. Cain that the milk "was running across the floor . . . and [Mr. Alcantar] slipped and fell . . . He said [the milk] wasn't on the floor very long before that . . . ."

Dollar General deposed Mr. Alcantar. Mr. Alcantar admitted that he did not know how long the liquid was on the ground prior to his fall. In response to questioning, Mr. Alcantar also stated the following:

[Mr. Alcantar]. . . . I took a couple of pictures of [the employee] there, and the spill, which shows all of this water trail that he left all the way around the store.

. . .

[Q. Are you] claiming that whoever was cleaning up this mess intentionally shoved this liquid towards your way?

[Mr. Alcantar]. No sir. No sir. I don't believe – from looking at the pictures and all, the big spill and him filling up his shoes full of water there, it just looked like he – you know, there wasn't no one there supervising this individual, and he basically just shoved the water to me and caused my damages.

. . . .

Q. . . . Now, I know you stated that it's your belief that as somebody was potentially cleaning up the spill, it was – the liquid was pushed over into the aisle shown in Exhibit 2; is that correct?

[Mr. Alcantar]. Yes, sir. That's what I believe happened. I believe he pushed it, pushed it out on me. . . . I believe he was trying to clean it up, but from Cathy's testimony, she said they were supposed to have gray towels to soak up the liquid, and I don't see no one using gray towels. I see a bucket

of water, and water that he was splish-splashing, basically creating a giant slip-and-slide in the middle of the store.

. . . .

Q. And tell me in your own words what you think Dollar General did wrong in this situation to cause this incident.

[Mr. Alcantar]. In my own words, I believe that the manager came, left these individuals alone, and they wasn't capable of handling this situation, and he just made the situation ten times worse. Just by [Ms. Cain's] testimony, there's no gray towels. If he would have just took the gray towels and started soaking up the water, then it probably would have never leaked underneath for me to fall.

Dollar General filed a motion for summary judgment. The company argued that Mr. Alcantar's claim failed as matter of law because he provided no evidence of how long the spill existed prior to his fall. Dollar General argued that Mr. Alcantar could not establish actual or constructive notice, a required element of his premises liability claim, without a clear indication of how long the spill existed. In the absence of notice, Dollar General argued that it owed no duty to Mr. Alcantar.

Mr. Alcantar opposed Dollar General's motion. In his response, Mr. Alcantar recounted the events as mentioned above and placed them into the context of Dollar General's standard operating procedures. Mr. Alcantar explained,

[Dollar General] has developed and maintains in its store office, a large book of standard operating procedures (SOPs), which are meant to instruct [Dollar General] employees how to deal with various issues . . . One of those SOPs of [Dollar General] deals with the cleanup procedures whenever there is a spill in the store aisles . . .

The [Dollar General] SOP for the cleanup of spills is for the employee(s) to lay out absorbent towels, known as "pigment towels," on the floor over the spill to soak up the liquid and put out a "WET" sign as soon as they get to the spill so that no one trips and falls.

. . .

Instead of using the special absorbent towels to first collect the liquid and stop it from spreading, as per [Dollar General's] standard operating procedure, the [Dollar General] employee(s) in the instant case attempted the cleanup using a mop or some type of squeegee-type tool, which had the effect

of pushing the liquid over to the next aisle instead of absorbing it.

Mr. Alcantar relied on these allegations and others to present multiple theories for liability in his response. Specifically, he argued that Dollar General either created a dangerous condition that led to his fall, knew via actual or constructive notice that a dangerous condition existed even if the company did not create it, or negligently caused his fall by failing to adhere to Dollar General's standard operating procedures and therefore pushing the liquid onto the next aisle where he fell.

Addressing Dollar General's motion for summary judgment, the trial court specifically concluded "evidence exists in the record to demonstrate [Dollar General] had notice of the spill prior to [Mr. Alcantar's] fall." The trial court further concluded that "it is possible the 'Wet Floor' sign was present in the adjacent aisle prior to [Mr. Alcantar's] slip and fall, and trier of fact could conclude Defendant had notice of the spill prior to Plaintiff's fall and was in the process of cleaning the spill when Plaintiff slipped and fell in the liquid." Nevertheless, the trial court granted Dollar General's motion for summary judgment. The trial court granted Dollar General summary judgment because it concluded that Mr. Alcantar had failed to present evidence of how the milk ended up on the floor or how long it had been there when he fell. Accordingly, the trial court determined that Mr. Alcantar could not prove that the dangerous condition had been on the floor for an unreasonable length of time prior to his fall, "such that Dollar General owed [Mr. Alcantar] a duty of care." The trial court, therefore, granted summary judgment to Dollar General.

Mr. Alcantar appeals from this decision, raising two issues:

I. Whether the trial court erred in granting the motion for summary judgment as to Plaintiff's premises liability claim and finding that no duty could be imposed on [Dollar General] because of the lack of evidence relating to the amount of time that the milk spill had been present despite evidence of actual knowledge of the spill and inferences that should have been applied in favor of the Plaintiff.

II. Whether the trial court erred in granting the motion for summary judgment as to Plaintiff's negligence claim relating to [Dollar General's] cleanup procedures and finding that no duty could be imposed on [Dollar General] because of the lack of evidence relating to the amount of time that the milk spill had been present.

Noting that the trial court found he presented evidence sufficient to establish notice for purposes of summary judgment, Mr. Alcantar argues that the trial court improperly created an additional requirement of proving how long the dangerous condition had existed beyond what was required for notice. Mr. Alcantar also asserts the trial court failed to engage with his contention that Dollar General is liable because of its employee's flawed manner of

cleaning the spill.

Dollar General disagrees with the trial court's conclusion that there was notice. The company insists that there was no constructive notice because Mr. Alcantar cannot establish how long before the slip and fall the milk was spilled. The company insists there was no actual notice because the evidence is insufficient to establish how far before the slip and fall the Dollar General employees became aware of the spill and, thus, whether they had time to take reasonable steps to correct the danger or warn of its existence.

## II.

This court "review[s] a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, we must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id*. When assessing the evidence in considering summary judgment, the evidence "must be viewed in a light most favorable to the claims of the nonmoving party, with all reasonable inferences drawn in favor of those claims." *Cotten v. Wilson*, 576 S.W.3d 626, 637 (Tenn. 2019). Viewing the evidence in this light, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Rye*, 477 S.W.3d at 250.

## III.

"[A] premises liability claim is a specific type of negligence claim that seeks to hold property owners liable for injuries negligently caused by defects or dangerous conditions on their property." *Wortham v. Kroger Ltd. P'ship I*, No. W2019-00496-COA-R3-CV, 2020 WL 4037649, at *7 (Tenn. Ct. App. July 16, 2020); *Fulghum v. Notestine*, No. M2022-00420-COA-R3-CV, 2023 WL 7151647, at *6 (Tenn. Ct. App. Oct. 31, 2023) (noting that "premises liability is a species of negligence"). Addressing premises liability claims, the Tennessee Supreme Court indicated that persons seeking to prevail against a property owner on a premises liability claim must prove the elements of a negligence claim, and in addition, must prove either that "the condition was caused or created by the owner, operator, or his agent," or "if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Parker v. Holiday Hospitality Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014) (quoting *Blair v. W. Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004)). The elements of a negligence claim require the plaintiff to establish "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." *Satterfield v. Breeding Insulation Co.*,

266 S.W.3d 347, 355 (Tenn. 2008).

With regard to notice, the Tennessee Supreme Court has defined actual notice as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *Kirby v. Macon Cnty.*, 892 S.W.2d 403, 409 (Tenn. 1994) (quoting *Texas Co. v. Aycock*, 227 S.W.2d 41, 46 (Tenn. 1950)); *see also, e.g., Farmer v. Wal-Mart Stores E., LP*, No. W2023-00468-COA-R3-CV, 2024 WL 2754581, at *2 (Tenn. Ct. App. May 29, 2024); *Lyon v. Castle Retail Grp., LLC*, No. W2019-00405-COA-R3-CV, 2020 WL 1867368, at *3 (Tenn. Ct. App. Apr. 14, 2020). As for constructive notice, the Tennessee Supreme Court has indicated that it can be established via "proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition." *Blair*, 130 S.W.3d at, 764; *see also, e.g., Farmer*, 2024 WL 2754581, at *2. "[W]here liability is based on constructive knowledge of the dangerous or defective condition, there must be material evidence from which the trier of fact could conclude the condition existed for sufficient time and under such circumstances that one exercising reasonable care and diligence would have discovered the danger." *Paradiso v. Kroger Co.*, 499 S.W.2d 78, 79 (Tenn. Ct. App. 1973); *see also, e.g., Farmer*, 2024 WL 2754581, at *2; *Jones v. Publix Supermarket, Inc.*, No. M2018-01672-COA-R3-CV, 2019 WL 2404975, at *3 (Tenn. Ct. App. June 7, 2019).

As for duty, the Tennessee Supreme Court has observed that, in the context of a negligence claim, "[d]uty is a legal obligation to conform to a reasonable person standard of care in order to protect others against unreasonable risks of harm." *Grogan v. Uggla*, 535 S.W.3d 864, 871 (Tenn. 2017) (quotation omitted). Furthermore, "an owner or occupier of land has the duty to exercise reasonable care with regard to invitees on the premises." *Binns v. Trader Joe's East, Inc.*, 690 S.W.3d 241, 254 (Tenn. 2024) (quoting *Est. of Smith v. Highland Cove Apartments, LLC*, 670 S.W.3d 305, 313 (Tenn. Ct. App. 2023)). This duty imposes a "responsibility of either removing, or warning against, any dangerous condition on the premises of which the property owner is actually aware or should be aware through the exercise of reasonable diligence." *Binns*, 690 S.W.3d at 254 (quoting *Parker*, 446 S.W.3d at 350).

Here, the trial court agreed with Mr. Alcantar that there is evidence that could establish actual notice. With that showing having been made, Mr. Alcantar argues the trial court impermissibly added timing beyond what is required for notice as an independent element of a prima facie case for a premises liability claim. He acknowledges that evidence of timing might be relevant "in the context of proving . . . either actual or constructive notice of the spill," but argues that the circumstances of this case give rise to a "reasonable inference that [Dollar General] had notice of the spill significantly in advance of the event." Dollar General's briefing does not suggest that the company disagrees with Mr. Alcantar's basic premise, that timing is not an independent element of a premises liability claim. The company does, however, contend that Mr. Alcantar did not present sufficient evidence

regarding the timing of the spill in relation to the slip and fall, and that, consequently, as a matter of law Mr. Alcantar cannot establish actual or constructive notice. In Dollar General's view, while the trial court erred in finding notice, the trial court, nevertheless, reached the proper decision in granting summary judgment. Dollar General's argument is, essentially, that notice must occur sufficiently in advance of a slip and fall that its employees can take reasonable steps to remove the danger or warn of its existence. The trial court reached the conclusion that summary judgment should be granted on this basis but concluded that timing in this case was related to an absence of duty rather than a lack of notice.

In other words, the trial court and Dollar General both understand Mr. Alcantar's case to be deficient as a matter of law. Both understand his case to be deficient because it is unclear how long before Mr. Alcantar's slip and fall a Dollar General employee became aware of the spill. The trial court and Dollar General divide as to their labeling of this deficiency of proof. The trial court views this evidentiary deficiency as a failure to establish duty. Dollar General views this evidentiary deficiency as a failure to establish notice.

Whichever label is assigned, even accepting for purposes of argument the broad contours of how the trial court and Dollar General understand premises liability,[2] the conclusion that summary judgment is warranted would still falter. It would still falter because Mr. Alcantar did, when viewed in a light most favorable to him as the nonmoving party, present evidence that a Dollar General employee was aware of the spill sufficiently before his slip and fall such that the employee could have taken steps to remove the danger or at a minimum warn of its existence. In fact, Mr. Alcantar presented evidence that a Dollar General employee was already taking steps to address the dangerous condition at the time of his slip and fall but did so in a manner that exacerbated the danger rather than removing or warning of it. As noted by the trial court, the evidence presented is sufficient to establish for purposes of summary judgment that there was already a caution warning "wet floor" sign in the aisle adjacent to the one in which Mr. Alcantar slipped and that a Dollar General employee was already mopping the floor in that adjacent aisle. Though the dangerous condition extended into the aisle in which he slipped and fell, Mr. Alcantar presented evidence that the employee had not placed a "wet floor" caution sign on the aisle in which he fell. Additionally, viewed in the light most favorable to the nonmoving party, Mr. Alcantar presented evidence that the employee had been mopping for some time, noting both aisles were "soaked . . . with water" from the mopping, the existence of a water

---

[2] This opinion should not be understood as either embracing or rejecting the trial court's or Dollar General's understanding of where the time necessary to warn about the dangerous condition fits into the analysis in considering a premises liability claim. It is unnecessary to resolve whether such a time window should be considered as part of the notice analysis, duty analysis, or, alternatively, whether it is relevant to question of whether there was negligent conduct constituting a breach. Wherever such consideration fits into premises liability analysis, Mr. Alcantar for reasons addressed in this opinion has made a sufficient evidentiary showing to avoid an adverse grant of summary judgment on this basis.

trail, and the soaked shoes of the employee. Mr. Alcantar presented evidence that the employee's mopping of the floor, rather than utilizing the pigment towels that the employee had been trained to use, created a "slip-and-slide" and increased the danger to Mr. Alcantar.

When viewed in a light most favorable to the nonmoving party, the evidence establishes that there was time to warn or address the dangerous condition but that the premises owner did so ineffectually. Mr. Alcantar presented evidence showing the immediate arrival of the employee from the adjacent aisle after Mr. Alcantar's slip and fall, the employee's clear awareness of an existing spill prior to Mr. Alcantar's fall, the placement of the caution wet floor sign in the adjacent aisle, the presence of a mop and bucket, the soaked floors, the employee's wet shoes, and water trail on the floor. For purposes of summary judgment, there is sufficient evidence that Dollar General was aware of the dangerous conditions sufficiently before Mr. Alcantar's slip and fall such that Dollar General could have addressed the dangerous condition or at least warned of it. Therefore, even if this court were to assume for purposes of argument that Dollar General is correct with regard to the need for such a time window to establish notice or that the trial court is correct that such a window is necessary to establish duty, Mr. Alcantar, nevertheless, made a sufficient showing that Dollar General had such a time window when the evidence is viewed in a light most favorable to him as the nonmoving party. Accordingly, we conclude the trial court erred by granting summary judgment to Dollar General.

V.

In considering the arguments advanced on appeal and for the reasons discussed above, we reverse the judgment of the trial court. The costs of the appeal are taxed to the appellee, Dolgencorp LLC, for which execution may issue if necessary. The case is remanded for such further proceedings as may be necessary and consistent with this opinion.

_____
JEFFREY USMAN, JUDGE

- 9 -