# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 2, 2024 Session

## SCOTT BAKER ET AL. v. LARRY BASKIN ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 18-1046-I      Patricia Head Moskal, Chancellor**

_____

### No. M2023-00433-COA-R3-CV

_____

Buyers of a residential home brought action against sellers for 1) breach of contract, 2) negligent misrepresentation, 3) negligence, 4) negligence per se, 5) gross negligence, 6) residential disclosures violations, and 7) fraud. The claims arise from the discovery of a sinkhole months after the sale. The sinkhole was not indicated "through the contour lines on the property's recorded plat," *see* Tenn. Code Ann. § 66-5-212(c) (2015), and the sellers insist they had no knowledge of a sinkhole on the property. For these reasons, they did not disclose the existence of the sinkhole on the Tennessee Residential Property Condition Disclosure form. Nevertheless, the proof at trial established that one of the sellers, Larry Baskin, while mowing the lawn, discovered a depression in the yard six months prior to listing the property for sale, which he believed to be caused by rotting roots from a tree that had been removed years earlier. He filled the depression with two four-by-four, pressure-treated, rot-resistant posts and topsoil. Because it was near a downspout, he also placed the plastic bag from the topsoil over the posts, which he covered with more soil and grass. The property was sold seven months later, during which time Mr. Baskin did not notice the area "concaving or dipping in any way" even though he mowed regularly over the area with his 500-pound riding mower. Following a bench trial, the court dismissed all claims except the negligence claim. Significantly, the court dismissed the claim for negligent misrepresentation because the purchase agreement contained an "as is" clause. However, the court held that Larry Baskin was liable under the claim for common law negligence, finding that he "breached the duty of reasonable care by not informing the Buyers of the existence of the hole prior to their purchase of the Property. The harm resulting from Mr. Baskin's breach was damage to the value of the Property." The court awarded the buyers compensatory damages of $55,000 for the diminution in value of the property. Additionally, finding the buyers to be the prevailing parties according to the purchase agreement, the trial court awarded them attorney's fees and costs. This appeal followed, with the sellers challenging Mr. Baskin's liability under the negligence claim and the buyers challenging the dismissal of the gross negligence claim. For the reasons explained below, we affirm the dismissal of the claim for gross negligence; however, we reverse the finding of Mr. Baskin's liability based on the claim of negligence because "a seller's

liability for the failure to disclose such material facts in a real estate transaction is coextensive with a party's liability for fraudulent or negligent misrepresentation." *Fayne v. Vincent*, 301 S.W.3d 162, 177 (Tenn. 2009). Because we have affirmed the dismissal of the claim for gross negligence and reversed the ruling concerning the negligence claim, we also vacate the award of damages and attorney's fees to the buyers. In that the sellers are now the prevailing parties, we remand with instructions to award the sellers the reasonable and necessary attorney's fees and costs they are entitled to recover pursuant to the parties' contract.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, Vacated in Part, and Remanded

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

J. Ross Pepper, Nashville, Tennessee, for the appellants, Larry Baskin and Linda Baskin.

Jean Dyer Harrison, Nashville, Tennessee, for the appellees, Julie Baker and Scott Baker.

### OPINION

#### FACTS AND PROCEDURAL HISTORY

Larry and Linda Baskin ("Sellers") had lived at 113 Blue Hills Court ("the Property") for thirty-two years, when in March 2017, Mr. Baskin felt a dip in the ground while riding the mower. Upon further investigation, he pulled back the grass and discovered a small hole to the side of a bush. He believed it was caused by the decay of roots from a tree that had been cut down years earlier. Because the hole was near a downspout, Mr. Baskin placed two five feet long, four-by-four pressure treated posts into the hole, placed some topsoil and the topsoil bag on top of the posts, and covered the area with more topsoil and grass.

Over the next seven months, between March and October 2017, Mr. Baskin never noticed the area "concaving or dipping in any way" even though he mowed regularly over the area with his 500-pound riding mower.[1] He stated that a professional landscaper also drove over the area with commercial landscaping equipment. For these reasons, Mr. Baskin believed the matter was resolved and no further action was required.[2]

---

[1] The weight was an approximation.

[2] Mr. Baskin testified that he did not discuss this discovery or repair with Mrs. Baskin, and she testified that she knew nothing of the hole until this suit was filed. Significantly, the trial court found that Mrs. Baskin had no knowledge of the hole until suit was filed, and that ruling is not challenged on appeal.

After deciding to move closer to their family, Sellers listed the home for sale on September 8, 2017, for the price of $329,900. In the process, they provided a Tennessee Residential Property Condition Disclosure form, which contained a "sinkhole" question:

> Is a sinkhole present on the property? A sinkhole is defined pursuant to Tenn. Code Ann. § 66-5-212(c) as "a subterranean void created by the dissolution of limestone or dolostone strata resulting from groundwater erosion, causing a surface subsidence of soil, sediment, or rock and is indicated through the contour lines on the property's recorded plat map."

Sellers checked the box "no." In response to the question if there were any "other soil problems," Sellers again checked the "no" box.

Four days later, Scott and Julie Baker ("Buyers") made an offer to purchase the Property. The purchase and sale agreement contained a sinkhole provision: "16. Seller's Additional Obligations. If Seller has any knowledge of an exterior injection well, a sinkhole as defined pursuant to Tenn. Code Ann. § 66-5-212(c) . . . , Seller shall be obligated to counter this offer by disclosure of the existence of the above." Sellers counter-offered with several conditions, one of which stated, "Buyer[s'] obligations are subject to a home inspection, but the property is purchased as is." Buyers responded in "Counter Offer #2," acknowledging, "Sale of home is contingent on a satisfactory home inspection. Buyers are aware that home is being sold 'as is.'" During the negotiation process, Buyers also signed a disclaimer notice that advised them to, among other things, seek the advice of a geotechnical engineer to determine the risk of sinkholes. Buyers performed a home inspection, which revealed nothing remarkable, and the parties closed on October 20, 2017. The final purchase price was $329,900.

Mr. Baker, one of the Buyers, testified that no issues were noted with the Property during the fall of 2017 or the winter of 2018. However, that spring, while Mr. Baker was digging in preparation to remove the shrubs in the front of the house, he discovered a partially filled plastic topsoil bag and a hole that was approximately a quarter inch in size. The small hole exposed the edge of a four-by-four post.[3] When Mr. Baker first saw the hole, he thought, as Mr. Baskin did a year earlier, that it had been caused by decayed roots. As he removed the post, the hole enlarged approximately 12 to 18 inches, and he could not see the bottom of the hole.

---

[3] Mr. Baker's testimony on this issue reads:

> So I tugged on the -- the plastic bag a little. It immediately -- everything -- the contents of the bag immediately dumped out and went into the hole. And that's when I pulled the bag out, and it was about a quarter inch hole at that time. And what it exposed was a -- it wasn't a 2x4. It was the edge of a 4x4. And I tugged on the 4x4 and more of it dropped out. And I pulled out [a] 5-foot 4x4, and the hole enlarged between 12 to 18 inches.

Buyers then contacted their insurance company. Following an inspection, the insurance representative informed them that the hole appeared to be a sinkhole. Buyers then consulted with a geotechnical engineer, John Rami Mishu, who confirmed that it was a sinkhole, adjacent to an old septic tank and sewer lines, and it was at least 12 feet deep.[4]

Buyers commenced this action against Sellers on September 27, 2018, asserting claims for: 1) breach of contract, 2) negligent misrepresentation, 3) negligence, 4) negligence per se, 5) gross negligence, 6) residential disclosures violations, and 7) fraud. Buyers sought rescission of the contract and return of the purchase price, compensatory damages, attorney's fees, and punitive damages. Sellers answered, "deny[ing] that a sinkhole existed on the property at the time the Tennessee Residential Property Condition Disclosure form was completed," denying knowledge of a sinkhole on the Property, denying that they breached their duty, and denying any misrepresentation. Sellers also raised the affirmative defenses of "statute of frauds, release, accord and satisfaction, merger and comparative fault."

On November 1, 2019, during the pendency of this action, Buyers listed the home on the market for $379,500, with the sinkhole disclosed in the listing. On November 3, Kathy Hughes made an offer to purchase the home for $330,000, and Buyers accepted with no counteroffer on November 5. After Ms. Hughes reduced her offer by $5,000 based on an inspection, the sale closed on December 19, 2019, for $325,000.

The case was tried without a jury, and the following witnesses testified: Scott Baker, a plaintiff and one of the Buyers; John Rami Mishu, geotechnical engineer; Larry Baskin, a defendant and one of the Sellers; Linda Baskin, a defendant and one of the Sellers; and Richard Courtney, real estate broker for the Buyers. Significantly, the trial court expressly found that the credibility of the trial witnesses was not at issue.[5]

Following the bench trial, the trial court dismissed all claims except for the common law negligence claim. As for the breach of contract claim, the court noted that the parties stipulated that no sinkhole was indicated through contour lines on the Property's recorded

---

[4] Mr. Mishu explained,

[B]y tape measure, extending it underground, it is at least 12 feet deep. And what I mean by "at least" is this tape measure is flimsy. And so when I send [my] tape measure down a hole, frequently, with the -- with these sinkhole defects, these ground defects that form voids and/or very soft soil and mud, the -- the dropout -- the hole doesn't extend nice and neatly vertically underground. It meanders to the left or to the right. And so all I can do with my tape measure is know that directly below me where I'm looking, it's [at] least 12 feet deep.

[5] As stated by the trial court in footnote 2 of its memorandum and order: "The Court did not find that the credibility of any of the trial witnesses was at issue."

plat, as required under subsection (ii) of the Residential Property Condition Disclosures Act.[6] Thus, because the second requirement of the statutory definition of sinkhole was not satisfied, the trial court concluded that Sellers did not breach paragraph 16 of the purchase agreement.

Concerning the fraud claim, the trial court found that:

Mr. Baskin's conduct was negligent in failing to inform the Buyers of the existence of a hole on the Property and his efforts to repair the hole, but the Court does not find that Mr. Baskin knowingly or recklessly misrepresented the existence of a "sinkhole" on the Property (which is the misrepresentation alleged) to the Buyers so as to constitute an intentional misrepresentation. Nor does the Court find that Mr. Baskin intentionally concealed the existence of a "sinkhole" on the Property. He did not know that the hole was a sinkhole. And while he was negligent in his efforts to repair the hole and by not informing the Buyers, his conduct does not rise to the level of fraudulent concealment of the existence of a "sinkhole" on the Property and concludes that fraud claim should be dismissed.

Regarding the gross negligence claim, the court concluded that Mr. Baskin's conduct regarding the hole was negligent; however, the court found that his "conduct was not informed, but he believed he had repaired the hole. The Court does not find sufficient proof to establish that Mr. Baskin's conduct rose to the level of a 'conscious neglect of duty or a callous indifference to the consequences[.]'"

As for the negligent misrepresentation claim, the trial court, relying on this court's decision in *Pritchett v. Comas Montgomery*, ruled that the "as is" provision defeated Buyers' claim "as a matter of law," because the "as is" provision eliminates the element of reasonable reliance. *See Pritchett v. Comas Montgomery Realty & Auction Co., Inc.*, No. M2014-00583-COA-R3-CV, 2015 WL 1777445, at *4 (Tenn. Ct. App. Apr. 15, 2015).

Concerning the common law negligence claim, the trial court made the following findings and conclusions:

The Court finds that Mr. Baskin discovered a deep hole in front of his house which, given its unknown depth, was a material fact—and defect—about which a potential purchaser of the Property should have been told, even

---

[6] The second statutory requirement of the definition of a "sinkhole" under the Residential Property Condition Disclosures Act is that it must be "indicated through the contour lines on the property's recorded plat map." Tenn. Code Ann. § 66-5-212(c)(ii) (2015). This statute was revised effective July 1, 2024. Throughout, however, we reference the version that was in effect when Buyers' complaint was filed.

if the hole did not meet the technical definition of a "sinkhole" under the Residential Property Disclosure Act or breach of the terms of paragraph 16 of the purchase contract. The Court further finds that Mr. Baskin's efforts to repair the hole by filling it with not one, but two, five-foot wooden posts and topsoil, and then covering the hole with a plastic bag and planting grass, without any further investigation or repair of the hole, created an unreasonable and foreseeable risk of harm to persons present on the Property, including potential purchasers, and to the stability of the house located on the Property given its close proximity to the hole. The Court finds that as a result of Mr. Baskin's actions in covering the hole, the Buyers could not have discovered the hole through the exercise of ordinary diligence. The Court concludes Mr. Baskin—but not Mrs. Baskin who had no knowledge of the hole—owed a duty to the Buyers of care to inform them of the existence of this hole and the risk of harm to their persons or the Property created by a hole of unknown depth. Mr. Baskin breached the duty of reasonable care by not informing the Buyers of the existence of the hole prior to their purchase of the Property. The harm resulting from Mr. Baskin's breach was damage to the value of the Property.

The court then awarded Buyers compensatory damages of $55,000 for the diminution in value of the Property. Finding that Buyers were the prevailing party, the court also awarded them costs and attorney's fees in accordance with Paragraph 13 of the purchase agreement;[7] those fees were later determined to be $18,875 in attorney's fees and $4,810.30 in discretionary costs. However, the court did not find that Mr. Baskin's conduct rose "to the level of egregiousness so as to support an award of punitive damages."

Sellers appeal the trial court's decision.

## ISSUES

Sellers raise four issues on appeal:

1. Whether the Trial Court erred in concluding that Defendant Larry Baskin was liable to [Buyers] for negligence under the common law of Tennessee?

2. Whether the Trial Court erred in finding that [Buyers] incurred damages as the result of the Trial Court's conclusion that Larry Baskin was negligent?

---

[7] Paragraph 13 of the purchase contract reads, in pertinent part:

13. Default. . . . In the event that any party hereto shall file suit for breach or enforcement of this Agreement (including suits filed after Closing which are based on or related to the Agreement), the prevailing party shall be entitled to recover all costs of such enforcement, including reasonable attorney's fees.

3. Whether the Trial Court erred in making an award of attorney's fees and discretionary costs to [Buyers] instead of to [Sellers]?

4. Whether the [Sellers] are entitled to an award of attorney's fees and expenses arising from this appeal?

Buyers raise five issues, three of which are substantially the same as Sellers:

1. Whether the Trial Court correctly held that Mr. Baskin was negligent?

2. Whether the Trial Court incorrectly held that Mr. Baskin was not grossly negligent?

3. Whether the Trial Court correctly awarded damages to the [Buyers]?

4. Whether the Trial Court correctly held that the [Buyers] were entitled to attorney's fees as the prevailing party?

5. Whether the [Buyers] are entitled to an additional award of attorney's fees incurred on appeal?

## STANDARD OF REVIEW

"The determination of negligence claims involves mixed questions of law and fact." *Francoeur v. State*, No. W2007-00853-COA-R3-CV, 2007 WL 4404105, at \*6 (Tenn. Ct. App. Dec. 18, 2007) (quoting *Kelley v. Johnson*, 796 S.W.2d 155, 157 (Tenn. Ct. App. 1990)). First, "[d]etermining the existence and extent of one person's duty to another is a question of law to be decided by the courts." *Guesthouse Intern., LLC v. Shoney's N. Am. Corp.*, 330 S.W.3d 166, 195 (Tenn. Ct. App. 2010) (citations omitted). Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

"Once duty is established, the question of breach of duty and proximate cause of the plaintiff's injury are usually treated as questions of fact." *Leatherwood v. Wadley*, 121 S.W.3d 682, 694 (Tenn. Ct. App. 2003). Our "review of findings of fact by the trial court . . . shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assoc's.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000) (citation omitted); *Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999).

We also give great deference to the trial court's credibility assessments. *See Watson v. Watson*, 309 S.W.3d 483, 490 (Tenn. Ct. App. 2009) (citation omitted). We do not disturb "factual findings based on witness credibility unless clear and convincing evidence supports a different finding." *Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 348 (Tenn. Ct. App. 2009) (citing *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315, 315–16 (Tenn. 1987)).

## ANALYSIS

### I. THE NEGLIGENCE CLAIM

Mr. Baskin contends that the trial court erred in its determination that he is liable for damage to the value of the Property based on principles of ordinary negligence. Specifically, he challenges the trial court's finding that

> Mr. Baskin . . . owed a duty to the Buyers of care to inform them of the existence of this hole and the risk of harm to their persons or the Property created by a hole of unknown depth. Mr. Baskin breached the duty of reasonable care by not informing the Buyers of the existence of the hole prior to their purchase of the Property. The harm resulting from Mr. Baskin's breach was damage to the value of the Property.

He presents three arguments concerning the common law negligence claim.

One, Mr. Baskin contends that he had no knowledge of the sinkhole and had no duty to disclose it.

Two, he contends:

> For the Trial Court to have found Mr. Baskin liable for failing to disclose the existence of the repaired hole, it could have only done so under the [Buyers'] causes of action for negligent misrepresentation or fraud because the elements of those causes of action define the outer limits of a seller's duty in a real estate transaction where a buyer alleges either, or both, that the seller made a misrepresentation or failed to disclose something. A finding of non-liability under those causes of action pretermitted any finding of liability under the [Buyers'] common law negligence claim. To put it another way, the Trial Court's findings of non-liability for fraud and negligent misrepresentation, which were correct, are irreconcilable with its finding of liability for common law negligence.

- 8 -

Three, Mr. Baskin contends that his alleged acts or omissions were neither the cause in fact nor proximate or legal cause of any damage to the Property, each of which are essential elements of a claim based on ordinary negligence. *See Morrison v. Allen*, 338 S.W.3d 417, 437 (Tenn. 2011). Thus, contrary to the trial court's finding, Mr. Baskin insists that he did not cause any "damage to the value of the property." Instead, the sole reason the Property lost value was the sinkhole, the existence of which was not discovered until after the sale. We will discuss each contention in turn.

A.

First and importantly, the parties stipulated at trial that the hole did not meet the statutory definition of a sinkhole. The applicable statutory language reads:

> (c)(1) In addition to any other disclosure required by this part, the seller shall, prior to entering into a contract with a buyer, disclose in the contract or in writing, including acknowledgment of receipt, **the presence of a known sinkhole on the property**.
>
> (2) **For purposes of this section, "sinkhole"**:
>
> > (i) **Means a subterranean void** created by the dissolution of limestone or dolostone strata resulting from groundwater erosion, causing a surface subsidence of soil, sediment, or rock; **and**
> >
> > (ii) **Is indicated through the contour lines on the property's recorded plat map**.

Tenn. Code Ann. § 66-5-212 (2015) (emphasis added). It is undisputed that no sinkhole was indicated through the contour lines on the Property's recorded plat. Thus, Sellers had no statutory duty to disclose the unknown sinkhole.

The trial court also made findings of fact that are germane to this issue. Specifically, the trial court found that Mr. Baskin "did not know the hole was a sinkhole" and that he had not "knowingly or recklessly misrepresented the existence of the 'sinkhole.'" It also found that Mr. Baskin had not "intentionally concealed the existence of the 'sinkhole.'"

The trial court found it significant that the hole was of an "unknown depth." However, the only witness who had any knowledge of the hole, and its depth, prior to the sale to Buyers was Mr. Baskin, and he repeatedly explained that he believed the hole, the dip or "depression," was where the roots of the removed pine tree had rotted, which he believed he had repaired.[8] We also find significant his actions of repeatedly driving his

---

[8] Mr. Baskin offered this testimony at trial:

lawnmower over the hole for the next seven months, supporting his belief that it was both repaired and safe. And as noted above, the trial court found Mr. Baskin, and all witnesses, to be credible. Thus, Mr. Baskin's testimony is not only credible, but unchallenged, as to his knowledge of the condition of the hole prior to the sale.

This is also significant because Buyers' geotechnical engineer, Mr. Mishu, testified that the growth of a sinkhole is unpredictable, and that there is no way to predict, with any precision, how much deeper and wider a sinkhole will get from year to year.

As it concerns issues of concealment or nondisclosure, we need not surmise the unknown, but only what was known, and this court has made it clear that "a plaintiff purchaser must show that the seller actually knew of the defect, not merely that he or she should have known." *Edmondson v. Coates*, No. 01-A-01-9109-CH00324, 1992 WL 108717, at *10 (Tenn. Ct. App. May 22, 1992) (citing *Akbari v. Horn*, 641 S.W.2d 506, 507 (Tenn. Ct. App. 1982)). The trial court's findings of fact, along with the details of Mr. Baskin's testimony, indicate that Mr. Baskin knew that there was a hole, or depression, in which he had forced two, five-foot long, 4x4 posts. He knew that he had removed a tree from that same area years earlier. And he knew that after repeatedly driving over the area with heavy equipment throughout a seven-month period, he observed no further issues with the hole. What was known to Mr. Baskin was that he had repaired a hole or depression, believed to be caused by rotted roots.

While Buyers showed that Mr. Baskin knew of a repaired hole, the evidence does not support a finding that Mr. Bakin had knowledge of a material defect, specifically, the existence of a sinkhole or even an unrepaired hole.

In determining a breach of duty, the defendant, here Mr. Baskin, must "fail[] to exercise reasonable care under the circumstances," "[t]he risk involved is that which is foreseeable," and it "is foreseeable if a reasonable person could foresee the probability of its occurrence or . . . was on notice that the likelihood of danger . . . is probable." *Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 178 (Tenn. 1992). As Sellers note in their brief, "Mr. Baskin was required to use the standard of care of a reasonable person under the circumstances, not that of a soil scientist or engineer."

---

Q. Mr. Baskin, when you have a hole that you have -- that's deep enough to put in two 4x4 posts that are 4 to 5 feet tall, did that not strike you as strange?
A. Not terribly because I believed this hole to be the -- the rotting out of the tree that I had cut down about 15 years earlier. And that was about a 30-foot tree.
Q. So it was your understanding -- is what your testimony is -- that you thought it was a rotting tree?
A. Yes.

Perhaps most relevant to our circumstances here,

> The actor's conduct must be judged in the light of the possibilities apparent to him at the time, and not by looking backward "with the wisdom born of the event." The standard is one of conduct, rather than of consequences. It is not enough that everyone can see now that the risk was great, if it was not apparent when the conduct occurred.

*Id.* (quoting 5 Prosser and Keeton, *The Law of Torts* § 31, p. 170 (1984)) (footnotes omitted in original).

While "the wisdom born of the event" revealed that the hole was not repaired, that it was at least 12 feet deep when discovered by Mr. Baker, and that it was a sinkhole, there is no evidence that Mr. Baskin possessed that knowledge when he repaired the hole or when he made disclosures about the Property. *Id.* While we now have the benefit of 20/20 hindsight, Buyers failed to prove that a material defect in the Property was or should have been apparent to Mr. Baskin at the time of his conduct. *See id.*

For these reasons, we find that the evidence preponderates against the trial court's determination that Mr. Baskin "breached the duty of reasonable care by not informing the Buyers of the existence of the hole prior to the purchase of the Property."[9] Because a breach of duty is an essential element of a negligence claim, *see Morrison*, 338 S.W.3d at 437, we respectfully reverse the trial court's decision in finding that Mr. Baskin was negligent.

B.

For completeness, we discuss Sellers' contention that the trial court's finding of liability for common law negligence is irreconcilable with its findings of non-liability for fraud and negligent misrepresentation.

We question, as our Supreme Court did in *Grogan v. Uggla*, whether Buyers' negligence claim here is simply redundant to their claim for negligent misrepresentation. *Grogan v. Uggla*, 535 S.W.3d 864, 868–69 (Tenn. 2017). The *Grogan* court explained:

---

[9] *Pitz* notes that "known material defects" should be disclosed "provided the defects are not apparent or readily discoverable through the exercise of ordinary diligence." *Pitz v. Woodruff*, No. M2003-01849-COA-R3-CV, 2004 WL 2951979, at *9 (Tenn. Ct. App. Dec. 17, 2004). It bears noting here that Buyers were advised, before closing, to seek the services of a geotechnical engineer to inspect for defects such as sinkholes, but they declined to do so. The trial court did not explore whether such an inspection would be considered "ordinary diligence," and we find it unnecessary to do so.

In *U.S. v. Neustadt*, the United States Supreme Court reasoned that negligence in an inspection underlying a report was part of a claim of negligent misrepresentation. *Neustadt*, 366 U.S. 696, 706–07, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). Several years later, however, the Court acknowledged that **a plaintiff might allege a separate cause of action when the negligent conduct is separate from the communication of misinformation**. *See Block v. Neal*, 460 U.S. 289, 296–97, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983). . . . In this case, the plaintiff has presented allegations separate from communication of misinformation. Therefore, we conclude that the plaintiff's complaint fairly raises both negligent misrepresentation (by way of his allegation that the defendant home inspector failed to report negligent construction) and ordinary negligence (by way of his other allegations that amount to a claim that the defendant home inspector negligently performed the inspection).

*Id.* at 869 (emphasis added).

Here, Buyers' "Negligence" claim, as stated in their complaint, is essentially a restatement of their claim for "Negligent Misrepresentation." This is evident from reading the complaint, for under the caption "Negligence" it reads, in pertinent part:

54. The [Sellers] had a **duty to disclose the existence of the sinkhole** pursuant to the contract at paragraph 16.

55. The [Sellers] knew or should have known that the hole in the ground which had no visible end was not an ordinary hole and **required disclosure**.

56. The [Sellers] had a **duty to disclose** any adverse facts of which they had notice.

57. The [Sellers] had notice and knowledge of the existence of the sinkhole.

58. The [Sellers] breached their **duty to the [Buyers] by failing to inform them of the sinkhole** and by covering up the evidence of the hole so it was not discoverable in the ordinary course of inspection.

59. The [Sellers] further breached their duty by **failing to provide notice of the sinkhole** to the [Buyers] as required by T.C.A. § 66-5-212.

60. As a result of the [Sellers'] breaches of duty, the [Buyers] have been compelled to hire and pay various experts to ascertain the existence and extent of the sinkhole and have purchased a home needing substantial repair.

61. As the result of the [Sellers'] misrepresentations, the [Buyers] are entitled to . . . [recover] damages equal to the cost of repair plus all costs and fees associated with ascertaining the damage to the home, plus a return of moneys paid to repair damage and the cost of improvements, or the diminution in value, and incidental and consequential damages.

(Emphasis added).

Thus, the essence of the alleged negligent conduct at the center of this claim is Mr. Baskin's failure to disclose the existence of the sinkhole. However, as noted earlier, the trial court found that Mr. Baskin "did not know the hole was a sinkhole," and it found that Mr. Baskin had not "knowingly or recklessly misrepresented the existence of the 'sinkhole.'" The court also found that Mr. Baskin had not "intentionally concealed the existence of the 'sinkhole.'" Further, it has been established that Sellers were under no duty to disclose the sinkhole, pursuant to its statutory definition.

The trial court's ruling concerning the common law negligence claim reads, in pertinent part:

**The Court concludes Mr. Baskin**—but not Mrs. Baskin who had no knowledge of the hole—**owed a duty to the Buyers of care to inform them of the existence of this hole** and the risk of harm to their persons or the Property created by a hole of unknown depth. **Mr. Baskin breached the duty of reasonable care by not informing the Buyers of the existence of the hole** prior to their purchase of the Property. **The harm resulting from Mr. Baskin's breach was damage to the value of the Property**.

(Emphasis added). Based on these findings, the court then awarded Buyers compensatory damages of $55,000 for the diminution in value of the Property.

The trial court's findings reveal that its ruling on the ordinary negligence claim was based on a finding of failure to inform Buyers of the sinkhole; however, the trial court also found that Mr. Baskin cannot be held liable based on a failure to inform—to disclose—because Buyers contractually agreed to purchase the Property on an "as is" basis. We find these two rulings irreconcilable as explained in *Fayne v. Vincent*, 301 S.W.3d at 177.

We also find it significant that a claim based on this conduct is not "separate from the communication of misinformation." *Grogan*, 535 S.W.3d at 869. And, as our Supreme Court explained,

In a transaction involving the sale of real property, the seller has a duty to disclose to the buyer material facts that affect the property's value and that are not known or reasonably discoverable by a purchaser exercising ordinary

- 13 -

diligence. *Simmons v. Evans,* 185 Tenn. 282, 285–86, 206 S.W.2d 295, 296 (1947); *Patel v. Bayliff,* 121 S.W.3d 347, 352–53 (Tenn. Ct. App. 2003). As a general matter, a party may be found liable for damages caused by his or her failure to disclose material facts to the same extent that the party may be held liable for damages caused by fraudulent or negligent misrepresentations. *Macon County Livestock Mkt., Inc. v. Ky. State Bank,* 724 S.W.2d 343, 349 (Tenn. Ct. App. 1986). Thus, **a seller's liability for the failure to disclose such material facts in a real estate transaction is coextensive with a party's liability for fraudulent or negligent misrepresentation.** *Justice v. Anderson County,* 955 S.W.2d 613, 616–17 (Tenn. Ct. App. 1997); *Wyner v. Athens Utils. Bd.,* 821 S.W.2d 597, 599 (Tenn. Ct. App. 1991).

*Fayne v. Vincent*, 301 S.W.3d at 177 (emphasis added). As noted earlier, the trial court dismissed Buyers' claims for negligent misrepresentation and fraud, and Buyers do not challenge these decisions on appeal.

Although the trial court dismissed Buyers' claims for negligent misrepresentation and fraud, the court found Mr. Baskin liable for damage to the Property based on Buyers' ordinary negligence claim. For the reasons stated above, we find these rulings irreconcilable.

C.

Mr. Baskin contends that his alleged acts or omissions were neither the cause in fact nor the proximate or legal cause of any damage to the Property, each of which are essential elements of a claim based on ordinary negligence. *See Morrison*, 338 S.W.3d at 437. Instead, the sole reason the Property lost value was the sinkhole, the existence of which was not discovered until after the sale.

There is no competent evidence to support a finding that anything Sellers did or failed to do damaged or devalued the Property. Not disclosing the unknown sinkhole did not devalue the Property. Placing two four-by-four posts and topping it off with dirt to level out the depression Mr. Baker found while mowing the lawn, as well as placing a plastic bag and grass over the dirt, did not worsen the situation nor devalue the Property. To the contrary, it was the existence of the sinkhole, which was unknown to Sellers, that devalued the Property.

Because Mr. Baskin's actions were not the cause in fact or proximate, or legal, cause of damage to the Property—essential elements of a negligence claim, see *Morrison v. Allen*, 338 S.W.3d at 437—Mr. Baskin cannot be held liable for the diminution to the value of the Property.

Accordingly, and for the reasons discussed above, we reverse the trial court's finding based on the claim of ordinary negligence.

## II. GROSS NEGLIGENCE

Buyers' claim of gross negligence is set forth in paragraphs 68 through 82 of the complaint.

We begin by noting that gross negligence is a "negligent act done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law." *Odum v. Haynes*, 494 S.W.2d 795, 807 (Tenn. Ct. App. 1972). Stated another way, as the trial court noted:

> "Gross negligence is conduct that amounts to 'a conscious neglect of duty or a callous indifference to the consequences.'" *Spearman v. Shelby Cnty. Bd of Educ.*, 637 S.W.3d 719, 736 (Tenn. Ct. App. 2021) (quoting *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994)). To prove a claim of gross negligence, a plaintiff must prove defendant's conduct was negligent and, further, was done with utter unconcern or reckless disregard for the safety or rights of others that "a conscious indifference is implied in law." *Id.* (citations omitted).

As noted earlier, the trial court found, and it is undisputed, that Mrs. Baskin had no knowledge of the hole her husband found or his efforts to fill in the hole. Thus, our focus is on what Mr. Baskin knew or should have known when he discovered the hole, the "depression," as he called it when he drove over it with his riding lawnmower, in March of 2017 and whether his acts or omissions thereafter were "done with utter unconcern for the safety of others[ ] or . . . done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law." *Odum*, 494 S.W.2d at 807.

Many of the factual assertions in the complaint state that Sellers had a duty to disclose a sinkhole; however, it has been established that Mrs. Baskin had no knowledge of the hole her husband found or his efforts to fill in the hole, and Mr. Baskin did not know of the existence of a sinkhole on the Property. The complaint further alleges that:

> 72. [Sellers] covered up the hole in the ground by wedging a wood post into the hole and "plugging" the top with a plastic bag filled with sand and covered with dirt and grass.

> 73. [Sellers] knew or should have known that a hole of this depth was not an ordinary hole.

- 15 -

74. The covering up of the hole was dangerous and could have swallowed a small child or pet as the "plug" of the hole only hid the danger hiding below an unstable surface.

.    .    .

77. [Sellers'] breaches were a conscious, voluntary act and omission in reckless disregard of their legal duty to disclose and of the consequences to [Buyers].

78. [Buyers] reasonably relied on [Sellers] to their detriment and were damaged by the reckless conduct of [Sellers].

79. The gross negligence of [Sellers] resulted in [Buyers] purchasing a property that has significant danger and damage and which is greatly reduced in value.

As explained above, there is no evidence to support a finding that anything Sellers did or failed to do damaged or devalued the Property.[10] It was the existence of the sinkhole, which was unknown to Mr. Baskin, that devalued the Property.

Moreover, the evidence in the record fails to establish that Mr. Baker's acts or omissions were of such a nature as to indicate an "utter unconcern for the safety of others," or that his acts or omissions constituted "a reckless disregard for the rights of others." *Odum v. Hayner*, 494 S.W.2d at 807.

Accordingly, we affirm the trial court's dismissal of the gross negligence claim.

### III. DAMAGES

Because Sellers are not liable to Buyers under any of the claims asserted, Buyers are not entitled to recover any damages. Accordingly, we vacate the award of damages to Buyers.

### IV. ATTORNEY'S FEES IN THE TRIAL COURT

Sellers also question whether the trial court erred in awarding Buyers their attorney's fees and discretionary costs in accordance with the purchase agreement and, in their brief, contend that Sellers should be awarded attorney's fees instead.

---

[10] And no child or pet (or anyone) was "swallowed" by the hole, which Buyers alleged could have occurred due to Sellers' acts and omissions.

Summarizing the general approach to the recovery of attorney's fees, our Supreme Court has explained:

> Tennessee has long followed the "American Rule" with regard to attorney's fees. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000). This Rule provides that "a party in a civil action may recover attorney's fees only if: (1) a contractual or statutory provision creates a right to recover attorney's fees; or (2) some other recognized exception to the American Rule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).

*Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017) (citations omitted). Then, specifically regarding the language of contractual provisions, this court stated:

> [T]he parties' use of the term "shall," i.e., "the prevailing party **shall** be entitled to recover all costs of such enforcement, including reasonable attorney's fees," indicates that the award of attorney's fees to the prevailing party is mandatory. *See Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012) ("'When "shall" is used . . . it is ordinarily construed as being mandatory and not discretionary.'") (quoting *Bellamy v. Cracker Barrel Old Country Store, Inc.*, 302 S.W.3d 278, 281 (Tenn. 2009)). Accordingly, Appellants are entitled to an award of attorney's fees if they are the prevailing party.
>
> Tennessee courts have defined a "prevailing party" as one who "succeeds on a 'significant claim' which affords the [party] a substantial measure of the relief sought." *Daron v. Dep't of Corr.*, 44 S.W.3d 478, 481 (Tenn. 2001). Additionally, a "prevailing party" has been defined as a party "who has succeeded 'on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit.[']" *Fannon v. City of LaFollette*, 329 S.W.3d 418, 431 (Tenn. 2010) (internal citations omitted).

*Jones v. Reda Homebuilders, Inc.*, No. M2020-00597-COA-R3-CV, 2021 WL 2375883, at *6 (Tenn. Ct. App. June 10, 2021) (emphasis in original) (alterations in original).

Here, the pertinent portion of the purchase agreement read:

> In the event that any party hereto shall file suit for breach or enforcement of this Agreement (including suits filed after Closing which are based on or related to this Agreement), the prevailing party shall be entitled to recover all costs of such enforcement, including reasonable attorney's fees.

Because the trial court determined that Mr. Baskin was negligent and Buyers prevailed, the trial court did not err in awarding Buyers their attorney's fees. However, having now reversed that decision, we find Sellers to be the prevailing party, and pursuant to the terms of the purchase agreement, along with the guidance of *Eberbach* and *Jones*, Sellers "shall be entitled to recover all costs of such enforcement, including reasonable attorney's fees." We therefore reverse the award of attorney's fees and remand to the trial court to determine the amount of reasonable attorney's fees to be awarded to Sellers.

## V. ATTORNEY'S FEES ON APPEAL

Sellers also request attorney's fees on appeal, arguing that "[t]he provision at issue entitles [Sellers] to an award of attorney's fees and costs arising from this appeal."

Our Supreme Court held in accordance with this premise in *Eberbach*, explaining that "the applicability of the [parties'] fee provision to [the] request for appellate attorney's fees turns on whether [the requesting party] was the 'prevailing party' for those claims in which she instituted proceedings to procure the enforcement of the [agreement] in the trial court and at the Court of Appeals." *Eberbach*, 535 S.W.3d at 480. The court reasoned that by obtaining a judgment in her favor and having that judgment affirmed by the Court of Appeals, the requesting party achieved the primary benefit sought at both the trial court and appellate levels, and was clearly the prevailing party at both levels. *Id.* The Supreme Court then reversed this court and awarded reasonable expenses, including attorney's fees, incurred at the appellate level. *Id. at* 480–481.

Finding Sellers to be the prevailing party, we must, according to the terms of their purchase agreement, award Sellers their reasonable attorney's fees and costs incurred at the appellate level and remand to the trial court to determine the amount of those fees.

## CONCLUSION

For the reasons above, we reverse the trial court's decision concerning the common law negligence claim, affirm the dismissal of the gross negligence claim, vacate the award of damages, and remand to the trial court to assess the award of attorney's fees and costs to Sellers in accordance with this opinion. Costs of appeal are assessed against Buyers, Scott and Julie Baker.

_____
FRANK G. CLEMENT JR., P.J., M.S.